**John J. HOELLEN and Hugh H. Carmichael, Individually and as representative of a class similarly situated, Plaintiffs,**

**v.**

**Frank ANNUNZIO, Defendant.**

**No. 72 C 1302.**

United States District Court, N. D. Illinois, E. D.

Sept. 15, 1972.

B. John Mix, Jr., Chicago, Ill., for plaintiffs.

James A. Dooley, Anthony J. Fornelli, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

TONE, District Judge.

This is an action challenging the use of the franking privilege by a Member of Congress for certain mailings which are alleged not to have been "upon official business" within the meaning of 39 U.S.C. § 3210. The case proceeded to trial before the court without a jury on an amended complaint seeking injunctive relief.

Congressman Frank Annunzio, the defendant, was elected in 1970 in the then Seventh Congressional District. He is now the Democratic candidate for Member of Congress in the new Eleventh Congressional District.[1] There is no overlap between the two districts. The plaintiff is Congressman Annunzio's Republican opponent in the Eleventh Congressional District, John J. Hoellen.[2]

In May 1972 the defendant used his franking privilege to mail 134,000 printed questionnaires asking for opinions on various public issues. Approximately 34,000 were addressed to persons who were his constituents in the old Seventh District, in which he is the incumbent Congressman, and approximately 100,000 were addressed to persons in the new Eleventh District, where he is a candidate. Printed on one side of the questionnaire are a picture of the Capitol, a picture of Congressman Annunzio, and in large type, "Congressman Frank Annunzio Asks Your Opinion!" Then follows a letter, with the salutation, "Dear Friend," signed by Congressman Annunzio, urging the addressee to fill out the questionnaire. The dateline shows "May

1972" and "Vol. 1, No. 1." The questionnaire portion is printed on the reverse side.

The names and addresses for the mailing were obtained from voter registration sheets. The mailing to the Eleventh District was to addressees in what defendant described as the six major wards in that district. The mailing to the Seventh District was to addressees in parts of each of three of the wards in that district.

Although Congressman Annunzio is in his fourth term, he has never before mailed a questionnaire. Shortly after the mailing he asked the opinion of Congressman Morris K. Udall, Chairman of the Subcommittee on Postal Service of the House Committee on Post Office and Civil Service as to the propriety of the mailing. Congressman Udall replied by a letter, received in evidence, in which he reviewed the contents of the questionnaire, noted that it is similar to those "mailed daily by hundreds of Members of Congress" and concluded that the questionnaire could properly be sent as franked mail. It does not clearly appear that the question of whether the mailing could be made to the district in which Congressman Annunzio was only a candidate was expressly presented to Congressman Udall, but his letter did state:

"Legally speaking, a member of Congress can send 'official business' (which your questionnaire is) anywhere in the United States."

In April the defendant used his franking privilege to mail some 300 copies of a brochure entitled, "The Capitol," which had been printed as a House of Representatives document pursuant to the authority of a Congressional resolu-

---

1. Established by the apportionment judgment of the United States District Court for the Northern District of Illinois entered September 20, 1971.

2. A claim for an accounting asserted in the original complaint by a second plain-

tiff who sued as a citizen, voter and taxpayer was dismissed on motion on the ground that the plaintiff lacked standing. Only injunctive relief is sought in the amended complaint.

tion. Some—the evidence does not indicate how many—were mailed to persons in the Eleventh District. The plaintiff has withdrawn his contention that this mailing was improper. 39 U.S.C. § 3211 expressly permits sending any public document printed by order of Congress as franked mail, without restriction as to addressee or purpose.

The other three mailings complained of were made in July 1972 after the filing of this action. They consisted of news releases, approximately 200 of which were sent to news services and newspapers throughout the country, including neighborhood newspapers in the Eleventh District, and to community leaders who would presumably be interested in the subjects of the releases, some of whom were in that district. One release dealt with a reduction in Government crime insurance policy rates by the Department of Housing and Urban Development made at the suggestion of Congressman Annunzio; the second announced House passage of a "Copernicus Day" resolution; and the third announced introduction by the Congressman of a resolution for a "National Sokol U.S.A. Day." Each of the releases carried Congressman Annunzio's picture.

A memorandum has been submitted to the Court by the Committee on House Administration of the United States House of Representatives as *amicus curiae*, pointing out "a congressional intention that the [franking] privilege not be unlimited," but further urging that "in general, the regulation of the privilege is a congressional and not a judicial matter," that "the federal courts should adopt an attitude of restraint in passing upon usages by Members of Congress of the franking privilege," that "the Court should not in any event adopt an approach which will subject Congressmen to detailed inquiries regarding their motives and purposes in the conduct of their offices," and that injunctive relief against further franked mailings "would be improper and would impair proper utilization of the franking privilege." I

am sympathetic with the concerns expressed by the Committee, and yet as I view the law I have a duty to assume jurisdiction, interpret the statute as it applies to the facts before me, and decide the case.

### Postal Statutes and Regulations

The privilege of sending franked mail is conferred on Members of Congress by 39 U.S.C. § 3210, et seq. That section permits them, and other named public officials, to "send as franked mail—

"(1) matter, not exceeding 4 pounds in weight, upon official or departmental business, to a Government official; and

"(2) correspondence, not exceeding 4 ounces in weight, upon official business to any person."

Other provisions of Title 39 authorize Members of Congress to use the franking privilege to send any public document, any part of the Congressional record, and seeds and agricultural reports emanating from the Department of Agriculture, without restriction as to purpose or addressee (§§ 3211, 3212, 3213); authorize a former President to send all his domestic mail as franked mail (§ 3214); and allow the surviving spouse of a Member of Congress to send correspondence relating to his death as franked mail for 180 days after his death (§ 3218). A person entitled to use the frank is prohibited from lending it or permitting its use by or for the benefit of any committee, organization, or association except a Congressional committee (§ 3215). Payment of the postage on franked mail to the Postal Service from public funds is provided for (§ 3216).

Postal Service regulations repeat the restriction that "official correspondence transmitted under frank of . . . Members . . . of Congress . . . must be on official or departmental business." 39 C.F.R. § 137.1(d)(1). The regulations also provide,

"Official mail of any kind must not be detained even though there are indications of abuse of official mailing privileges. It must be promptly dispatched and delivered to the addressee. Reports of the indicated abuse must be submitted to the Bureau of Finance and Administration, Office of Mail Classification." 39 C.F.R. § 137.9(a).

Another provision of the regulations provides that Members and Members-elect of the House, unlike Senators, may address mail sent under the franking privilege for delivery to postal patrons (i. e., not addressed to the recipient by name and post office address) within his district. 39 C.F.R. § 122.4(d)(2). That provision is not involved here. All the mailings were to named addressees.

### Enforcement by the Post Office

Until recently the Post Office Department exercised some supervision over the use of the frank by Members of Congress. Until 1968, the Department took the position that it was "required to determine whether mail has been sent improperly under the frank," and when it found improper use of the frank the Department was "charged with responsibility for collecting the postage which should have been paid." The Congressional Franking Privilege, POD Publication 126 (April 1968), p. 1. When, in the opinion of the General Counsel of the Post Office Department, the frank was improperly used, the Department requested payment of postage, although it took no action to collect. The General Counsel also rendered advisory opinions to members of Congress and members of the public, upon request, as to whether given material could properly be sent as franked mail.

The Department changed its position in 1968. It decided that the official business limitation of the statute was after all not "a directive to the Executive Branch, [but] is really more of a guideline for the conduct of [Con-gress's] own members." Noting that Congress "nowhere expressly enjoins the Post Office Department to police the behavior of individual Members of Congress in their use of their franking privilege," the Department concluded that its "involvement" had reached "the point at which the mailings of a substantial number of Congressmen are being questioned on a continuing basis," and that continuation of the practice would "find the Executive Branch becoming increasingly involved in the conduct of the official duties of the Congress, even to the point of engaging in censorship." Accordingly, the practice of requesting payment from Congressmen who were found to have misused their franking privilege was discontinued, although advisory opinions were still furnished on request. Memorandum of Timothy J. May, General Counsel, Post Office Department, dated December 26, 1968, printed in Law and Regulations Regarding Use of the Congressional Frank, Committee Print No. 14, 92d Cong., 1st Sess. (1971), pp. 5–6.

In August 1971 the U.S. Postal Service, which had just taken over from the former Post Office Department under the Postal Reorganization Act of 1970, announced that it would not continue its predecessor's practice of rendering advisory opinions on the franking privilege. The new agency, it was said, was to be removed from the "political arena," and "determinations as to what is or is not the 'official business' of a Member of Congress . . . frequently have, or appear to have, political overtones" and are "more properly within the province of Congress itself." Letter of David A. Nelson, Senior Assistant Postmaster General and General Counsel, U.S. Postal Service, dated August 12, 1971, printed id., at pp. 6–7.

In a memorandum to his colleagues in the House in late 1971, Congressman Udall, the House Postal Service Subcommittee Chairman, stated that each member must decide what is frankable, stated with reference to individually ad-

dressed letters that "What constitutes official business must be decided by the Member," and offered some general rules as to postal patron mass mailings. He then stated that there was no enforcement machinery to enforce the rules he had suggested as to postal patron mailings but that conceivably an opponent or interested citizen could

"(a) Seek injunctive relief in the U.S. Courts and ask for an interpretation of pertinent law or regulation.

"(b) File a complaint with the House Committee on Standards of Official Conduct, which presumably could make determinations and enforce them with the sanctions it has available." (*Id.* at pp. 1–2.)

*Jurisdiction*

■ The complaint plainly sets forth a claim arising under a postal statute of the United States, 39 U.S.C. § 3210. The claim is within the federal judicial power defined in Article II, § 2. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The statute itself neither provides nor proscribes a private right of action and the legislative history seems to be similarly barren of indication whether Congress intended the courts to entertain a private action. Congressman Udall's memorandum of late 1971 referred to above is at least some indication that Congress anticipated that an aggrieved private party could resort to the courts for injunctive relief for a violation of federal regulations emanating from Title 39. When faced with a similar lack of direct evidence of Congressional intent, the Supreme Court has found an implied private right of action in the absence of an effective alternative remedy available to a citizen aggrieved by a violation of a statute.

J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), Allen v. State Board of Elections, 393 U.S. 544, 556–557, 89 S.Ct. 817, 22 L.Ed. 2d 1 (1969). Here, too, there is no effective alternative remedy, since the Postal Service has abandoned the field and Congress is hardly equipped to afford a remedy (*see* United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 2540, 33 L.Ed.2d 507 (1972)), especially when relief must be granted immediately to be effective. Under these circumstances, we may safely rely on the broad language of the jurisdictional statute, 28 U.S.C. § 1339,[3] to hold that Congress has assigned to the district courts power to hear a private action under 39 U.S.C. § 3210. *See* Rising v. Brown, 313 F.Supp. 824 (C.D.Cal.1970). Whether this Court should refuse to exercise that power because of the delicate "political" nature of the questions presented, or because principles of Congressional immunity would foreclose an adequate consideration of them, is discussed below.

■ Plaintiff, as the opposing candidate in the forthcoming election, has standing to assert the claim that the defendant is misusing the franking privilege to advance his candidacy in violation of the statute, since he has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of [the] issues." Baker v. Carr, *supra*, 369 U.S. at 204, 82 S.Ct. at 703; Rising v. Brown, *supra*, 313 F. Supp. 824 (C.D.Cal.1970).

■ Defendant contends that plaintiff's complaint presents a "political question" and is therefore nonjusticiable. The test to be used to determine whether the separation of powers makes a claim a "political question" was set out in Baker v. Carr, *supra*, 369 U.S. at 217, 82 S.Ct. 691 at 710, and reaffirmed

3. "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service."

in Powell v. McCormack, *supra,* 395 U.S. at 518–519, 89 S.Ct. 1944:

"Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

"Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence."

There is no provision of the Constitution which commits the determination of whether the frank has been misused to the Legislative Branch. Nor does the defendant indicate precisely which of the other considerations outlined above makes the plaintiff's claim "political." Rather, his argument seems to rest generally on the comity owed the Legislative Branch by the Judiciary and on the contention that it would be intruding upon the legislative function for this Court to determine what the duties of a Member of Congress are with regard to the franking privilege.

In *Powell,* the Supreme Court was faced with essentially the same argument. The defendants there contended that a "potentially embarrassing confrontation between coordinate branches" would result if the Court were to decide whether Congress was required to seat Powell if he met the qualifications for office contained in the Constitution. The Court replied, 395 U.S. at 548–549, 89 S.Ct. at 1978:

"But . . . a determination of petitioner Powell's right to sit would require no more than an interpretation of the Constitution. Such a determination falls within the traditional role accorded courts to interpret the law, and does not involve a 'lack of the respect due [a] coordinate [branch] of government,' nor does it involve an 'initial policy determination of a kind clearly for nonjudicial discretion'."

In the instant case, plaintiff asks this Court to make a determination just as traditional as the interpretation of the Constitution—the interpretation of an Act of Congress. To construe the words, "official business," in 39 U.S.C. § 3210 is no more of an intrusion upon the prerogatives of the Legislative Branch —in the absence of a specific statutory direction not to construe the statute— than the more typical statutory construction, not involving the obligations of Congressmen, in which the courts engage as a matter of course. The mere fact that this statute purports to regulate the conduct of Members of Congress does not, without more, take it outside the bounds of proper judicial scrutiny. For this Court to construe this statute no more involves a lack of respect due the Congress, or a policy determination of a kind clearly for non-judicial discretion, or a possibility of embarrassment from divergent pronouncements by various departments of the Federal Government on the question plaintiff propounds to us, than the construction of a statute not involving the conduct of Congressmen. Here, as in any other case, if the Congress believes we have misjudged its intention on either the reach of the statute, its application to Members of Congress or its enforceability in the district courts, it can, subject to constitutional requirements, change the law. The courts would then be bound to effectuate its intention regarding any of

these matters. United States v. Brewster, *supra*. [4]

It remains for us to inquire whether there is any basis for our refusing to accept jurisdiction other than the political question doctrine. The fountainhead of the principle of Congressional immunity from suit is the Speech or Debate Clause of the Constitution, Article I, § 6, which is not raised specifically by the defendant or the House of Representatives Committee on House Administration in its *amicus curiae* brief. We must nevertheless inquire whether that clause bars this action against a Member of Congress or precludes us from granting injunctive relief.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, they [Senators or Representatives] shall not be questioned in any other place." The Supreme Court had held in cases preceding *Powell* and *Brewster* that the protection of the Clause was confined to Members acting in the sphere of "legitimate legislative activity. . . . This Court has not hesitated to sustain the rights of private individuals when it found Congress was acting outside its legislative role." Tenney v. Brandhove, 341 U.S. 367, 376–377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951).

■ The issue is whether the alleged conduct complained of here, the use or misuse of the frank, is within the penumbra of the Clause's protection. Stat-ed another way, the question is whether the use of the franking privilege to communicate with the public is within that sphere of direct legislative activity for which a Congressman's motivation is immunized from judicial inquiry.[5] For the gravamen of the plaintiff's complaint here is that Congressman Annunzio sent out the mailings in question for political purposes, *i. e.*, to aid in his campaign for re-election, rather than for legislative purposes, *i. e.*, to inform the public about legislative matters or to inform himself of the public's views on legislative matters. Plaintiff plainly asks us to inquire into the motive with which the defendant Congressman acted. If the activity—the mailings under the frank—is within the sphere protected by the Speech or Debate Clause, a motivational inquiry would be foreclosed by that clause, and this Court would be unable to entertain the complaint.

■ The *Brewster* decision is decisive of this issue. In holding that the Speech or Debate Clause did not immunize Senator Brewster from prosecution on federal bribery charges, the Supreme Court distinguished between Congressional conduct which is clearly part of the legislative process—such as voting, speaking on the floor or conducting a legislative hearing—and conduct which is incidentally related to the legislative process. The Court, 408 U.S. at 512, 92 S.Ct. at 2537, confined the protections of the Clause to the former and specifically included the conduct with which we are

---

4. In *Brewster*, the Supreme Court in effect construed the reach of the federal laws against bribery and found that they were meant to be applied in the Courts against Members of Congress. The Court also observed that if it was misjudging the intention of Congress, Congress could change the law: "If we underestimate the potential for harassment, the Congress, of course, is free to exempt its Members from the ambit of federal bribery laws . . . . " 408 U.S. at 524, 92 S.Ct. at 2543.

5. That the Speech or Debate Clause forbids both the Executive and Judicial

Branches of the Government from questioning the motivation of legislators for "legitimate legislative activity" is no longer in doubt. The foreclosure of a motivational inquiry was one of the most important objectives of the framers in devising the Speech or Debate Clause. *See* Tenney v. Brandhove, *supra*, 341 U.S. at 377, 71 S.Ct. 783. But what is at issue is the nature of the Congressional activity to which the protections of the clause attach and thus for which a Member's motivation will not be questioned.

concerned in the instant case in the latter:

> "It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech and Debate Clause. These include a wide range of legitimate 'errands' performed for constituents, the making of appointments with government agencies, assistance in securing government contracts, preparing so-called 'news letters' to constituents, news releases, speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause."

In light of this language, there can be no doubt that the activities at issue in this case, sending out documents and questionnaires to constituents and others, while "entirely legitimate activities" related to the legislative process, are not "purely legislative activities" protected by the Speech or Debate Clause. Therefore no doctrine of legislative immunity precludes judicial inquiry into the legality of Congressman Annunzio's use of the frank in this case, even if that inquiry necessitates a consideration of his motives in making the mailings.

■ Finally, with regard to injunctive relief, it follows *a fortiori* from the holding in *Brewster* that if conduct by a Member of Congress which is outside the sphere of purely legislative activity is not immunized from criminal prosecution, then conduct in that category is not immunized from injunctive relief.

The issuance of an injunction should be governed in this case by the same equitable principles that govern the issuance of an injunction in the usual case.

### The Merits

■ The three press releases can be disposed of briefly. All deal with official matters and were sent to some 200 representatives of the media and community leaders in various localities. Although some of these addressees may have been within the Eleventh Congressional District, that district was not the target of the mailings. It seems fairly clear that Congressman Annunzio could properly determine that these mailings were "upon official business." The fact that the press releases contained his picture does not render their subject matter less official. Mailing them as franked mail did not violate § 3210.

The questionnaires present a different problem. Plaintiff first contends that the mailing of the questionnaires as franked mail to any person, even constituents in the Seventh Congressional District, was a violation of the statute. He points to the picture of the Congressman and to what he calls the public relations features of the document. The evidence shows that the mailing of questionnaires, reports of results of questionnaires, and newsletters is common practice among both Senators and Members of the House. Invariably such material contains a picture of the sender and his name in large type. There are many samples of such mailings in evidence, and a number of these are very similar to the one in the case at bar. All but three of these samples show on their face that they were addressed to the sender's constituents. Communications of this type, even though they contained a picture of the Member of Congress, were regarded as official business by the postal authorities when they assumed authority to determine frankability. The Congressional Franking Privilege, *supra*, pp. 1–3. "Questionnaires are within 'official business' when they

cover subjects which are official business." *Id.*, at p. 2.

Whether a mailing is "upon official business" depends not only upon its contents but upon the purpose for which it is sent, which may be inferred from the circumstances. Clearly Congressman Annunzio had the right to send the questionnaire as franked mail to his constituents in the Seventh District. It was within the proper exercise of the duties of his office to consider, and hence to solicit, the views of his constituents on matters of public importance that were, or were likely to be, before the Congress. The mailing of the 34,000 questionnaires into the Seventh Congressional District as franked mail was proper.

The 100,000 mailing into the Eleventh Congressional District, in which he was not a representative but a candidate, stands on a different footing. There is no doubt of a Congressman's right to solicit by questionnaire the opinions of citizens outside his own district, if that is in fact what he is doing. He represents the interests of all citizens, not merely his constituents, and he may properly inform himself of the views of citizens outside his district. The difficulty here is that Congressman Annunzio's mailing outside his district cannot reasonably be viewed as an effort to so inform himself. That mailing, which was three times the volume of the mailing to his own district, was made to the residents of the six major wards in the district in which he was a candidate and which he did not yet represent, and to no one else. The only reasonable inference that can be drawn is that the mailing into the Eleventh District was for the purpose of advancing his candidacy, and that therefore it was not "upon official business."

Defendant argues that Congress and the Postal Service have specifically limited the franking of postal patron mail to the Congressman's constituents but have not so limited the franking of individually addressed mail. But Congress has required that franked mail, no matter how or to whom it is addressed, must be "upon official business."

Defendant's argument that whether matter is official business depends entirely on its contents, and that once it is determined that the matter is "official" it can be sent to anyone without geographical limitation, is based on a misplaced reliance upon the words "to any person" in clause (2) of § 3210. In the first place, those words must be read in context. Under clause (1) of § 3210 matter weighing up to 4 pounds may be sent "to a Government official," and under clause (2) matter weighing up to 4 ounces may be sent "to any person." Under either clause the mailing must be "upon official business." The words "to any person" in clause (2) were not intended to dilute or to give content to the requirement that the mailing be "upon official business," any more than were the words "to a Government official" in clause (1). They were intended merely to designate those to whom matter weighing up to 4 ounces, as opposed to heavier matter, can be sent. The mailing must still be "upon official business" to be eligible for franking.

It is true that the statute contains no geographical limitation on the destination to which franked mail can be sent. But what is mailed to "any person" must be "upon official business," and in determining whether the business of the mailing was "official" the Court cannot close its eyes to the obvious inferences which can be drawn from the persons and the locale to which the franked mail was sent, in addition to what is contained within the four corners of the mailing itself.

An injunction will issue against the use of the frank by the defendant for mass mailings to residents of the Eleventh Congressional District, including residents whose names and addresses were taken from voter registration sheets, until such time as defendant is a

**316**

duly elected Member-elect or Member of Congress representing that district. The injunction will not prohibit use of the frank for mailings to media representatives, community leaders, or other persons within that district or elsewhere upon official business.

Since defendant prevailed on certain issues and plaintiff on one, each party will bear his own costs.

This memorandum of decision will stand as findings of fact and conclusions of law as provided in Rule 52(a) of the Federal Rules of Civil Procedure.