**F. M. VAN HECKE, Plaintiff,**

v.

**Henry S. REUSS, Defendant.**
**Civ. A. No. 72-C-583.**

United States District Court,
E. D. Wisconsin.

Nov. 3, 1972.

David C. Sullivan, Milwaukee, Wis., for plaintiff.

Ronald S. Jacobs, Milwaukee, Wis., for defendant.

## MEMORANDUM DECISION ON MOTION FOR PRELIMINARY INJUNCTION

REYNOLDS, Chief Judge.

In this action plaintiff challenges the use of the franking privilege by a member of Congress for certain mailings which are alleged not to have been "upon official business" within the meaning of 39 U.S.C. § 3210. Jurisdiction is conferred by 28 U.S.C. §§ 1291 and 1339.

Plaintiff F. M. Van Hecke is the Republican candidate for Congress in Wisconsin's Fifth Congressional District, and the defendant Henry S. Reuss is the Democratic incumbent running for re-election. Plaintiff's motion for a temporary restraining order was denied, and the matter is now before me on his motion for a preliminary injunction against defendant's use of the franking privilege prior to the election on November 7, 1972. In light of plaintiff's failure to show either that past mailings violated the franking privilege or that he is threatened with further mailings before the election, his motion is denied.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In July 1972 the defendant used his franking privilege to mail an undisclosed number of letters (hereafter "July mailing") consisting of a single sheet of paper with a statement by defendant about the handling of the federal budget on one side and a list of the Agriculture Department's bulletins for homemakers on the other. Printed above defendant's statement is a picture of defendant and a letterhead announcing that the letter came from defendant's office.

The defendant's next mailing was in August (hereafter "August mailing"). It consisted of a small pamphlet which indexed selected federal publications on consumer products. The pamphlet was published by the Consumer Product Information Coordinating Center of the General Services Administration. The mailing also included a cover letter from defendant introducing the pamphlet and instructing the reader on ordering the publications.

The final mailing alleged to violate the franking privilege was made in September 1972 (hereafter "September mailing"). It consists of a single sheet of paper with printing and photographs on both sides and is entitled "A Record of Action for America's Elderly Written By The Ninety-Second Congress." On the top of the title page are the words

"Congressman Reuss Reports," the letterhead of the House of Representatives, defendant's signature, and the parenthetical statement "Not Printed at Government Expense." The text discusses specific legislation passed to assist the elderly, the effect of the legislation on the economy, and the burden of inflation.

All the mailings were addressed to "Postal Patron" pursuant to 39 C.F.R. § 122.4(d)(2)(a). They were only sent to defendant's constituents in the Fifth Congressional District.

Plaintiff filed this action on October 19, 1972, charging that the mailings were sent for the purpose of aiding defendant's re-election and, hence, were not "upon official business." Plaintiff's motion for a temporary restraining order was denied from the bench on October 23, 1972, because it did not appear that there would be further mailings before the matter could be more carefully considered. Briefs were submitted, and a hearing on plaintiff's motion for a preliminary injunction was held on November 1, 1972.

In Hoellen v. Annunzio, 468 F.2d 522 (7th Circuit, 1972), the Seventh Circuit Court of Appeals in a two-to-one decision set forth the principles that must govern district courts in this circuit in determining whether a violation of the franking privilege has occurred. That case, like the one here, involved a suit by one candidate for Congress against another. The majority in Annunzio held that mailings would be "upon official busi-ness" when their purpose was to further a legitimate legislative function other than the sender's own re-election. It therefore became the court's duty to determine the purpose of the mailings.* The opinion further states that when the content of the mailing indicates an official purpose, extrinsic evidence bearing on the sender's actual motivation ordinarily should not be considered. However, the majority held, courts should not close their eyes in the face of extrinsic evidence which reveals that an appearance of official business is nothing more than a mask or a private purpose.

In Annunzio the defendant had mailed questionnaires shortly before the election to both his constituents in the district he represented and to nonconstituents in the district where he was then running for office. The court of appeals, like the district court below, had no difficulty in approving defendant's use of the franking privilege to send the questionnaires into his own district:

" * * * Clearly Congressman Annunzio had the right to send the questionnaire as franked mail to his constituents in the Seventh District. It was within the proper exercise of the duties of his office to consider, and hence to solicit, the views of his constituents on matters of public importance that were, or were likely to be, before the Congress. * * *." Hoellen v. Annunzio, 348 F.Supp. 305 (N.D. Ill., 1972), cited with approval in Hoellen v. Annunzio, 468 F.2d 522 (7th Circuit, 1972).

* Judge Swygert, in dissent, disagreed with this dichotomous approach. Rather than indulge in the fiction that legislators' purposes can be neatly grouped into those that are official and those that are political, he recognized the practical fact that many activities have a dual purpose, and legitimately so. The actions of a representative that keep him in the public eye and in touch with his constituency are often no less a part of a representative's "business" in a democracy than the many ministerial actions he performs "officially." In this sense politics is his official business. Judge Swygert's test would allow use of the franking privilege whenever one can reasonably infer that the mailing serves any legitimate legislative purpose other than the sender's re-election.

I believe that the printed material should be judged by its content and other objective evidence dealing with its use. It is unwise for a court to attempt to determine the "intent" or "motive" of a member of Congress. But if the sender's intent is to be considered at all, Judge Swygert's test more closely reflects reality and is more workable.

The mailings to nonconstituents, however, were enjoined since the court of appeals found substantial evidence to support the district court's finding that they were for the purpose of advancing defendant's candidacy.

The primary evidence leading to the district court's finding was, of course, that the questionnaires were not sent to defendant's constituents but to others whose views would not ordinarily be of any more importance to him as a Congressman from another district than those of any residents of Illinois. Other evidence showed that in defendant's four years as a Congressman, this was the first time he had faced significant opposition, and this was also the first time he had mailed any questionnaires.

Under the approach of *Annunzio*, plaintiff here has fallen far short of showing that defendant's mailings violated the franking privilege. Plaintiff admits that defendant sent all the mailings to his constituents in the Fifth Congressional District, the factor crucial in *Annunzio* and in the California case of Rising v. Brown, 313 F.Supp. 824 (C. D.Cal.1970). Moreover, the contents of the mailings themselves indicate that each was mailed for the purpose of furthering a legitimate legislative function.

■ The list of Department of Agriculture publications in the July mailing along with defendant's promise to send them to his constituents on request indicates that the purpose of the mailing was to assist the constituents in obtaining the publications. As if to remove any doubts that such mailings were "on official business," Congress expressly authorized the sending of agricultural reports under the franking privilege in 39 U.S.C. § 3213. That the mailing contained defendant's picture no more destroys its official character than did the picture of the defendant on the press releases in *Annunzio*. Without dealing in detail with the content of the short letter about the handling of the federal budget, I believe it sufficiently indicates the purpose of informing defendant's constituents to be considered "official business," even standing alone.

■ Plaintiff's complaint about the August mailing is even less meritorious. The index of bulletins about consumer products plainly concerns "official business," and even the district court in Schiaffo v. Helstoski, 350 F.Supp. 1076 (D.N.J.1972), which has given the most narrow scope to the franking privilege, has held that cover letters are permissible.

■ The September mailing adopts a more argumentative tone than the others, yet it is full of factual information of general interest to defendant's constituents and in particular to the elderly. Far from being a simple appeal for votes as characterized by plaintiff, or a mere glorification of the defendant's past voting record as was the mailing in Rising v. Brown, 313 F.Supp. 824 (C.D.Cal. 1970), the September mailing is a unified description of the legislative activity of the 92nd Congress concerning the elderly. In contrast with the mailings in *Rising*, the September mailing makes no mention of political parties and contains no picture of defendant nor any reference to defendant personally in the text of the report. The mailing also contains no reference to the upcoming election. Indeed, nothing in the mailing conflicts with the standards used by the Post Office prior to 1969 when it had the responsibility of determining what was a proper use of the franking privilege:

"Correspondence on 'Official Business' is that in which the member deals with the addressee as a citizen of the United States or constituent, as opposed to the relationship of personal friend, the relationship of candidate or prospective candidate and voter, or when the member writes in the capacity of a member of a political party or faction.

\* \* \* \* \* \*

"Appeals for political support, references to what a member expects to do in the next Congress sent out be-

fore an election, discussion of a prior political campaign, discussion of a coming political campaign and reference to campaign opponents as such are all matters beyond the official business concept." "The Congressional Franking Privilege," Post Office Department Publication #126 (April 1968).

Under the approach of *Annunzio*, I find that in light of the totality of evidence, the purpose of the September mailing was to inform defendant's constituents of the recent legislative activity concerning the elderly. It is within the proper exercise of the duties of defendant's office to fulfill that purpose.

In making this determination I wish again to express my doubts about the wisdom of inquirying into the "motives" of legislators to determine whether they have acted out of a desire to perform their official duties or to win re-election. The September mailings illustrate the difficulties with this approach. Though, as I found, the overall purpose was to inform constituents on a matter of public interest and not to win re-election, few would claim that the purposes could be separated in the mind of any elected official. Does not the approach in *Annunzio* and *Rising* then make the use of the franking privilege depend on how well the legislator masks his private purpose? Is it not just a question of subtlety? As Justice Holmes correctly saw that every idea may be an incitement, so too every fact concerning the recent legislative past may influence a candidate's re-election. The test proposed by Judge Swygert in his dissent in *Annunzio* would alleviate these difficulties by asking only that the mailing further some legitimate legislative purpose other than the sender's re-election.

Plaintiff has also failed to show that further mailings are likely to be made before the election if this injunction is not granted. The defendant has submitted an affidavit in which he states that he plans no further mailings before the election. Plaintiff's reply has been to allege that defendant has a pattern of sending mailings shortly before elec-

tions. Yet the only evidence plaintiff has offered to show such a pattern is his own testimony that as a resident of the Fifth District he received no mailings during defendant's current term besides the three alleged to violate the franking privilege, all of which were sent within five months of the election. Plaintiff's evidence does not convince me that defendant's unequivocal declaration of his intentions should not be believed.

Surveying the record, I find that despite the briefs and affidavits which have been submitted and the two hearings which have been held, plaintiff has come forward with no evidence that would justify an injunction against the defendant.

For the foregoing reasons, plaintiff's motion for a preliminary injunction is denied.