John J. HOELLEN, Plaintiff-Appellee,

v.

Frank ANNUNZIO, Defendant-Appellant.

No. 72–1794.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 11, 1972.

Decided Oct. 20, 1972.

Rehearing Denied Nov. 10, 1972.

James A. Dooley, George T. Murphy, Jr., Chicago, Ill., for defendant-appellant.

Morris A. Seeskin, B. John Mix, Jr., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and STEVENS and SPRECHER, Circuit Judges.

STEVENS, Circuit Judge.

The district court enjoined defendant, a Member of Congress, from using the frank[1] authorized by 39 U.S.C. § 3210

---

1. 39 U.S.C. § 3201 provides, in part:
"As used in this chapter—
* * *
"(3) 'frank' means the autographic or facsimile signature of persons authorized by sections 3210–3216 and 3218 of this title to transmit matter through the mail without prepayment of postage or other indicia contemplated by sections 733 and 907 of title 44;
. . ."
Section 3210 provides, in part:
"The Vice President, Members, and Members-elect of Congress, Secretary of

the Senate, Sergeant at Arms of the Senate, Clerk of the House of Representatives, and Sergeant at Arms of the House of Representatives, until the thirtieth day of June following the expiration of their respective terms of office, may send as franked mail—
"(1) matter, not exceeding 4 pounds in weight, upon official or departmental business, to a Government official; and
"(2) correspondence, not exceeding 4 ounces in weight, upon official business to any person. . . ."

for mass mailings to residents of Illinois' Eleventh Congressional District until after the election in November. Although he now represents the Seventh Congressional District, defendant is a candidate for election in the Eleventh District; plaintiff is his opposing candidate.

In his appeal to this court, defendant contends: (1) that his mailings into the Eleventh District, even if made for the purpose of advancing his candidacy, were nevertheless "upon official business" within the meaning of § 3210; (2) that inquiry into his motivation is foreclosed by the Speech or Debate Clause, Art. I, § 6 of the Constitution[2]; and (3) that an injunction should not have issued because plaintiff failed to prove irreparable injury.

The essential facts are summarized in one paragraph of the district court's written opinion:

"In May 1972 the defendant used his franking privilege to mail 134,000 printed questionnaires asking for opinions on various public issues. Approximately 34,000 were addressed to persons who were his constituents in the old Seventh District, in which he is the incumbent Congressman, and approximately 100,000 were addressed to persons in the new Eleventh District, where he is a candidate. Printed on one side of the questionnaire are a picture of the Capitol, a picture of Congressman Annunzio, and in large type, 'Congressman Frank Annunzio Asks Your Opinion!' Then follows a letter, with the salutation, 'Dear Friend,' signed by Congressman Annunzio, urging the addressee to fill out the questionnaire. The dateline shows 'May 1972' and 'Vol. 1, No. 1.' The questionnaire portion is printed on the reverse side." 348 F.Supp. 305, 308 (N.D.Ill.1972).

The district court concluded that the mailing of the 34,000 questionnaires into the Seventh Congressional District as franked mail was proper, but the 100,000 mailing into the Eleventh District was not. The court found that the defendant's "mailing outside his district cannot reasonably be viewed as an effort to inform himself" and specifically "that the mailing into the Eleventh District was for the purpose of advancing his candidacy." The Court concluded that mailing into that District was not "upon official business" within the meaning of § 3210.[3]

"The 100,000 mailing into the Eleventh Congressional District, in which he was not a representative but a candidate, stands on a different footing. There is no doubt of a Congressman's right to solicit by questionnaire the opinions of citizens outside his own district, if that is in fact what he is doing. He represents the interests of all citizens, not merely his constituents, and he may properly inform himself of the views of citizens outside his district. The difficulty here is that Congressman Annunzio's mailing outside his district cannot reasonably be viewed as an effort to so inform himself. That mailing, which was three times the volume of the mailing to his own district, was made to the residents of the six major wards in the district in which he was a candidate and which he did not yet represent, and to no one else. The only reasonable inference that can be drawn is that the mailing into the Eleventh District was for the purpose of

---

2. That section provides, in relevant part, that "for any Speech or Debate in either House, they [Senators or Representatives] shall not be questioned in any other Place."

3. The basis of the district court's ruling on the merits is set forth in the following two paragraphs:

"Whether a mailing is 'upon official business' depends not only upon its contents but upon the purpose for which it is sent, which may be inferred from the circumstances. Clearly Congressman Annunzio had the right to send the questionnaire as franked mail to his constituents in the Seventh District. It was within the proper exercise of the duties of his office to consider, and hence to solicit, the views of his constituents on matters of public importance that were, or were likely to be, before the Congress. The mailing of the 34,000 questionnaires into the Seventh Congressional District as franked mail was proper.

## I.

There is no question about our jurisdiction to construe the statute. See 28 U.S.C. §§ 1339 and 1291. Although the election will not necessarily moot the case,[4] its practical importance will expire on November 7, 1972. For that reason, at defendant's request we expedited the appeal. Despite the political context in which the issue arises, we are not being asked to decide a nonjusticiable "political question." See Baker v. Carr, 369 U.S. 186, 226, 82 S.Ct. 691, 7 L.Ed.2d 663. The appeal merely requires us to perform our accepted role of construing language which Congress has enacted into law.

That language authorizes various officials, including Members and Members-elect of Congress, to send letters weighing 4 ounces or less at no cost [5] provided that the mailing is "upon official business." No one suggests that the statute was intended to authorize purely personal mail to be sent at government expense.[6]

Plaintiff argues, in effect, that if a mailing is motivated by a Congressman's desire to advance his candidacy, it is personal and, therefore, not within the statute; otherwise, the argument

runs, the public purse may be used to finance partisan causes. Illinois State Employees Union, Council 34, et al. v. Lewis (slip opinion at 6–8) (No. 71–1619) (7th Cir. September 18, 1972). At the other extreme, defendant argues that a Congressman's motive in using his franking privilege is wholly irrelevant; under this approach the character of a mailing as official or unofficial should be judged solely by its content. Otherwise, defendant argues, the judiciary may be required to enter into an "uncharted area" in which it must inquire into the motives of individual legislators, an area of inquiry which courts have abjured since the days of Chief Justice Marshall. Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162. There is merit in both arguments, but we conclude that neither is acceptable.

A legislator's desire to retain his public office or to obtain another is laudable and should be encouraged, not demeaned. Implicit in a representative democracy is the assumption that such motivation will provide a wholesome influence on legislative action as well as incentive for the numerous related functions which legislators properly and legitimately perform

advancing his candidacy, and that therefore it was not 'upon official business.'" 348 F.Supp. 305, 315 (N.D. Ill.1972).

4. If defendant is elected, the injunction will expire by its terms; if plaintiff is elected, however, the injunction will continue to prevent defendant from making mass mailings into the Eleventh District until June 30, 1973. See footnote 1, *supra.*

5. The postage on mail sent under the franking privilege by Members of Congress is paid by a lump sum appropriation to the legislative branch and then paid to the Postal Service as postal revenue. 39 U.S.C. § 3216(a).

6. The fact that the franking privilege does not apply to personal or purely partisan mail is clearly stated in Post Office Department guidelines quoted, in part, in Judge Williams' opinion in Rising v. Brown:

"In Post Office Department Publication #126 (April, 1968) entitled 'The Congressional Franking Privilege' that department discussed what it felt was a *proper use* of the franking privilege:
'Correspondence on "Official Business" is that in which the member deals with the addressee as a citizen of the United States or constituent, as opposed to the relationship of personal friend, the relationship of candidate or prospective candidate and voter, or when the member writes in the capacity of a member of a political party or faction.'
It went on to say:
'Appeals for political support, references to what a member expects to do in the next Congress sent out before an election, discussion of a prior political campaign, discussion of a coming political campaign and reference to campaign opponents as such are all matters beyond the official business concept.'"
313 F.Supp. 824, 827 (C.D.Cal.1970).

in an effort to serve their constituents well.[7] The proposition that such legislative activities should lose their character as "official business" whenever motivated by a purpose to please the electorate is manifestly too broad to be accepted.

■ But on the other hand, a narrow standard that would preclude consideration of any evidence except the contents of the mailing itself would be unreliable and, indeed, would not avoid consideration of the sender's motive. In the extreme case, the text of a letter—perhaps as overt plea for financial support in a partisan election—would plainly reveal an unofficial purpose. In other cases, the contents might be neutral or ambiguous—perhaps a check or a simple affirmative reply—and additional evidence would be needed to determine whether the mailing served an official or an unofficial purpose: To whom was the letter sent? For what expense was the check a payment? Extrinsic evidence of the sender's motive would clearly be relevant to the question whether such a mailing was "upon official business."

■ This case falls into a different category. Inquiry limited to the contents of the mailing would indicate an official purpose. For certainly it is appropriate for a Congressman to solicit the views of his constituents on issues of public importance. But if we may go beyond the contents of a letter to ascertain the character of an ambiguous mailing, logic dictates that we should not close our eyes in the face of extrinsic evidence which reveals that an appearance of official business is nothing more than a mask for a private purpose. The district court found that this was such a case, and that finding is amply supported by the record.

The defendant is completing his fourth term as Representative of the Seventh Congressional District. In prior elections he faced no significant opposition. Before he decided to stand for election in the Eleventh District he had never sent any questionnaires to either constituents or nonconstituents. The mailing of 100,000 questionnaires to nonconstituents during an election campaign cannot reasonably be explained as an attempt to solicit voter sentiment on pending issues. The evidence indicates that defendant decided to make a second mass mailing into the Eleventh District even though he had not received any compilation of information derived from the first mailing. The mailing has, however, enhanced his "voter recognition," and thus advanced his candidacy in the Eleventh District. The mailing might, of course, inform defendant about the views of his future constituents. But the statute extends the franking privilege to Members-elect, not to mere candidates, and certainly cannot be construed to favor one of two opposing candidates entitled to equal treatment under the law. *Cf.* Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969). We believe the district court's conclusion that this mass mailing was not "upon official business" within the meaning of 39 U. S.C. § 3210 was clearly correct.

It is urged, however, that this holding (a) deprives the defendant of an advan-

---

7. "It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech and Debate Clause. These include a wide range of legitimate 'errands' performed for constituents, the making of appointments with government agencies, assistance in securing government contracts, preparing so-called 'news letters' to constituents, news releases, speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause." United States v. Brewster, 408 U.S. 501, 512, 92 S.Ct. 2531, 2537, 33 L.Ed.2d 507.

tage enjoyed by other incumbents, and (b) will embroil the judiciary in a spate of unseemly litigation. Neither suggestion is valid.

An incumbent is not authorized by the statute to use his franking privilege for unofficial mailings to advance his candidacy. Even under defendant's construction of the statute, if the contents of a mass mailing reveal an abuse of the franking privilege, the abuse should be discontinued. The fact that incumbents may have broadly construed the term "official business" in mailings to their constituents is no reason to permit a plainly unofficial mailing to nonconstituents at government expense.

Of course, other litigation may flow from this decision. But the special facts presented by this record do not invite any flood of comparable suits. This defendant is running in an entirely different district from the one he now represents. Only mass mailings to nonconstituents have been enjoined. The injunction does not affect the defendant's right to report to, or to solicit the views of, his own constituents.

Our construction of the Act may discourage mass mailings to nonconstit-

uents by individual legislators for the purpose of sampling public opinion on questions of current importance. But we are not persuaded that Congress intended to authorize individual legislators to conduct such polls at government expense either indiscriminately or for their own special political purposes. *Cf.* Rising v. Brown, 313 F.Supp. 824, 826–827 (C.D.Cal.1970). In any event, we decide only the case presented by the record before us, and we agree with the district judge's analysis of this mailing.

## II.

■ Defendant's reliance on the Speech or Debate Clause as foreclosing inquiry into his motivation assumes that the mailing was a legislative act. But, as the district court clearly recognized, the Supreme Court's recent decision in United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507, requires rejection of that assumption.[8] Although a Congressman's motivation for a legislative act may not be questioned, the clause does not preclude consideration of his motive in the determination of whether a particular mailing was "upon official business" within the meaning of § 3210.

8. The district court stated:

"The *Brewster* decision is decisive of this issue. In holding that the Speech or Debate Clause did not immunize Senator Brewster from prosecution on federal bribery charges, the Supreme Court distinguished between Congressional conduct which is clearly part of the legislative process—such as voting, speaking on the floor or conducting a legislative hearing—and conduct which is incidentally related to the legislative process. The Court, [408 U.S. 501,] 92 S.Ct. at 2537, confined the protections of the Clause to the former and specifically included the conduct with which we are concerned in the instant case in the latter:

[See quotation from *Brewster* in footnote 7, *supra*.]
In light of this language, there can be no doubt that the activities at issue in this case, sending out documents and questionnaires to constituents and others, while 'entirely legitimate ac-

tivities' related to the legislative process, are not 'purely legislative activities' protected by the Speech or Debate Clause. Therefore no doctrine of legislative immunity precludes judicial inquiry into the legality of Congressman Annunzio's use of the frank in this case, even if that inquiry necessitates a consideration of his motives in making the mailings.

"Finally, with regard to injunctive relief, it follows *a fortiori* from the holding in *Brewster* that if conduct by a Member of Congress which is outside the sphere of purely legislative activity is not immunized from criminal prosecution, then conduct in that category is not immunized from injunctive relief. The issuance of an injunction should be governed in this case by the same equitable principles that govern the issuance of an injunction in the usual case." 348 F.Supp. 305, 314 (N.D.Ill.1972).

## III.

The district court found "that plaintiff will suffer immediate and irreparable injury if injunctive relief is denied." This finding is supported by evidence that the mass mailing into the Eleventh District enhanced defendant's candidacy, that additional mailings were planned, and that the adverse effect on plaintiff's candidacy is not adequately compensable in damages.

Defendant argues, however, that plaintiff's injury has been more than offset by the adverse publicity which defendant has received as a result of this litigation. Whether that publicity is the proximate result of this litigation or merely a foreseeable consequence of defendant's abuse of his franking privilege, we are persuaded that public condemnation of an objectionable practice does not diminish the plaintiff's entitlement to judicial relief which is otherwise appropriate. The finding of irreparable injury was supported by the record; the injunction properly issued.

The judgment is.

Affirmed.

SWYGERT, Chief Judge (dissenting).

I believe the majority in this case has undertaken an impermissible judicial intrusion into the motivation of members of Congress in performing their legislative functions.

The question to be resolved in this appeal is whether the courts can enjoin the mailing of a questionnaire by a congressman asking for the responses of nonconstituent citizens as not being "official business." The majority holds that the courts can do so if there is "extrinsic evidence which reveals that an appearance of official business is nothing more than a mask for a private purpose." I agree.

The majority also holds that it is necessary to look at evidence other than the contents of the mailing in order to determine whether the use of the frank was proper. Again I agree. The mailing of a questionnaire, such as presented here, can be an ambiguous act, so that it is not possible to tell solely from the contents of the document whether the mailing is "upon official business." For example, if the defendant had mailed the questionnaire to a political public relations firm as a sample questionnaire, such mailing would not be "official business." The identity of the recipient would clearly reveal the nonofficial character of the mailing.

In the case before us the questionnaire was sent to both constituent and nonconstituent citizens of Illinois. Ostensibly, the contents of the questionnaire and the identity of the recipients reveal an "official business" purpose. On that point I am in accord with the district judge's observation when he wrote:

> There is no doubt of a Congressman's right to solicit by questionnaire the opinions of citizens outside his own district, if that is in fact what he is doing. He represents the interests of all citizens, not merely his constituents, and he may properly inform himself of the views of citizens outside his district.

The basis of my disagreement with the ultimate holding of the district court (sustained by the majority) that the mailings of the questionnaire to citizens in the Eleventh District were not "upon official business" lies in the district court's findings that "Congressman Annunzio's mailing outside his district cannot reasonably be viewed as an effort to . . . inform himself" and that "[t]he only reasonable inference that can be drawn is that the mailing into the Eleventh District was for the purpose of advancing his candidacy."

Both the district court and the majority seem to limit the purpose of a franked mailing under the statute to a single motivational factor—either official business or a private objective. I reject such a dichotomous approach. A legislator's activity may legitimately have a dual purpose—to carry out his official duties and at the same time enhance his political stature. He may

publish news releases and answer citizens' letters in order to inform and educate citizens while at the same time increasing his name recognition among voters and potential voters. Many other activities of legislators may have dual purposes, such as the convening of hearings on school desegregation and police abuse during an election year. That being the case, I would fashion a broad test in interpreting the statute: Unless it can be said that the purpose in using the franking privilege by a member of Congress is solely for personal reasons, including his political enhancement, the statute is not offended; or, stated differently, if a reasonable inference can be drawn that particular mailing falls within a legitimate legislative activity, the privilege is not abused regardless of the existence of personal political motives. The test that I propose is not a balancing test but a test to determine whether the questioned conduct was official business; once that is determined, there can be no further inquiry into a legislator's motive.

Applying this test to the facts in the instant case, I do not believe that those facts warrant a finding that the *only* reason for the defendant's mailing of the questionnaire to residents of the Eleventh District was to enhance the chances for his election to Congress from that district. The content of the questionnaire and the recipients clearly discloses that the document deals with official business. The franking privilege of a congressman is not confined by the statute or postal guidelines to his constituents.[1] The right to solicit information and views on public questions

from citizens regardless of their residency is plainly authorized by the language of the statute when it speaks of mailings "upon official business to any person." If a document relating to the official activity of a member of Congress is addressed to a citizen *qua* citizen, be he a constituent or nonconstituent, no inquiry can be made into the motives for the mailing. A contrary holding would require the courts to inquire into the motives of a congressman for his franked mailing even to his own constituents of a document ostensibly dealing with public business since the statute does not differentiate between constituents and nonconstituents.

Accordingly, even though the dominant motive for the mailing to residents in the Eleventh District may have been for personal political reasons, it was error for the district court to find that it was the only reasonably inferred motive.

---

1. 39 U.S.C. § 3210 provides in pertinent part:
    . . . Members . . . of Congress . . . may send as franked mail . . . correspondence . . . upon official business to any person.
The postal guidelines for franking mail provide in pertinent part:
    Correspondence on "Official Business" is that in which the member deals with the addressee as a citizen of the United States or constituent as opposed to the relationship of personal

friend, the relationship of candidate or prospective candidate and voter or when the member writes in the capacity of a member of a political party or faction.
    *    *    *    *    *
    Questionnaires and the tabulation of results of questionnaires are within "official business" when they cover subjects which are official business. Post Office Department, The Congressional Franking Privilege, at 1–2 (Pub. 126 April, 1968).