383 A.2d 201

In re General Election Expenses of Milton J. SHAPP in the Election of November 5, 1974.

Appeal of Robert J. BUTERA, Richard J. Tilghman, Stephen F. Friend, Nicholas J. Maiale and James R. Ronca.

Supreme Court of Pennsylvania.

Argued Nov. 14, 1977.

Decided Jan. 26, 1978.

482

Perrin C. Hamilton, Philadelphia, for appellants.

Nathan L. Posner, Philadelphia, for appellee.

David E. Prewitt, Frederick L. Voight, Philadelphia, for amicus curiae, Committee of Seventy.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

On June 18, 1976 appellants, five electors in the Commonwealth of Pennsylvania, filed a petition in the Commonwealth Court seeking to compel the appellees to file a supplemental account for the political committee known as Pennsylvanians for Shapp-Kline. The appellants are Robert J. Butera, Richard J. Tilghman, Stephen F. Friend, Nicholas J. Maiale and James R. Ronca. In addition to the political committee, Pennsylvanians for Shapp-Kline, the appellees are Milton J. Shapp and Ernest P. Kline, who were candidates for Governor and Lieutenant Governor, respectively, in the general election of 1974, and Nancy Mawby, who served as treasurer of the committee.

Pursuant to Section 1607(a) of the Pennsylvania Election Code, 25 P.S. § 3227(a) (Supp.1977–78), the committee filed an account with the Bureau of Elections on December 5, 1974, listing disbursements made, contributions received, and liabilities of the committee as of November 4, 1974, the day before the general election. In their complaint, appellants alleged that as a result of a newspaper article appearing in a Philadelphia newspaper on May 21, 1976, they became aware of additional funds contributed to the committee, received before and after the election, which were not reported to the Bureau of Elections. Appellants prayed for an accounting of receipts and expenditures not yet reported, as well as an audit of the accounts. Appellees filed preliminary objections to the petition, including a demurrer, contending (1) that there was no statutory duty to file the supplemental

report requested and (2) that the request for an audit was untimely since more than 30 days had elapsed since the filing of the committee's account on December 5, 1974.

The Commonwealth Court sustained respondents' preliminary objections and dismissed the petition. In its view, the Election Code contemplated the filing of a single expense account within thirty days after an election, and the Code did not oblige a candidate to file "supplemental expense accounts" for contributions received after an election. Second, the court determined that appellant's request for an audit of the expense account actually filed by the Committee was barred by § 1611 of the Election Code. Since the petition for an audit was filed more than eighteen months after the last day for filing the challenged expense account, and § 1611's thirty-day period was deemed mandatory rather than directory, the court determined that the petition was untimely. We conclude that the Commonwealth Court properly dismissed the complaint and therefore affirm its order.

Section 1607 of the Pennsylvania Election Code concerns the filing of expense accounts and provides in relevant part:

"Every candidate for nomination or election, and every treasurer of a political committee, or person acting as such treasurer, shall, *within thirty days after every primary and election* at which such candidate was voted for or with which such political committee was concerned, if the amount received or expended or liabilities incurred shall exceed the sum of one hundred fifty dollars, *file a full, true, and detailed account,* subscribed and sworn to by him, setting forth each and every sum of money received, contributed or disbursed by him for primary or election expenses, the date of each receipt, contribution and disbursement, the name of the person from whom received or to whom paid, and the specific object or purpose for which the same was disbursed." 25 P.S. § 3227(a) (Supp.1977–78). (Emphasis added.)

■ We agree with the Commonwealth Court's conclusion that:

"[Section 1607] requires the filing of a single expense account within a thirty-day period after the election, and the committee here met these requirements with the filing of an expense account on December 5, 1974. Moreover, there is clearly no continuing obligation on a candidate or on the political committee to file additional supplemental expense accounts for contributions received after an election. Whether or not the law should contain additional requirements is not before us here. Any change, however salutary, is a matter exclusively for legislative consideration." 28 Pa.Cmwlth. 163, 368 A.2d 858 (1977).

■ Appellants argue that the purpose of the Code is to subject to public scrutiny all campaign contributions, whenever received. However true that may be, we may not, under the pretext of furthering the object and purpose of the Election Code, disregard its letter and incorporate into the Code's accounting requirements a provision which the Legislature did not include. See *Lurie v. Republican Alliance,* 412 Pa. 61, 65, 192 A.2d 367, 370 (1963); *Commonwealth ex rel. Fox v. Swing,* 409 Pa. 241, 247, 186 A.2d 24, 27 (1962); 1 Pa.C.S. § 1921(b) (Supp.1977–78).

Appellants cite *In re Friends of McErlean,* 431 Pa. 334, 246 A.2d 341 (1968), and *Lurie v. Republican Alliance,* 412 Pa. 61, 192 A.2d 367 (1963), as precedent for elevating "substantive legislative intent" over the Election Code's "procedural scheme." We think appellants' reading of those cases is erroneous. In *Lurie,* we said that in resolving *ambiguities* in the Code, or when a particular section was obscure, the Code's object and purpose were entitled to major consideration in determining its construction. 412 Pa. at 64, 192 A.2d at 370. Not only have we determined that the Election Code is unambiguous insofar as post-election contributions are concerned, but we also reaffirmed in *Lurie* our unwavering position that we may not, under the rubric statutory interpretation, add to legislation matters conspicuously absent therefrom. *Id.* at 65, 192 A.2d at 370. The Commonwealth Court correctly observed that

"[b]oth *McErlean* and *Lurie* are authority for the proposition that it is within the power of [the courts] to compel a candidate or a political committee to produce *an* expense account after the expiration of the thirty-day period after the election *if that has not been done.* Neither case holds that it is necessary for a candidate or committee to file more than one expense account, nor could such a holding be properly made under the law as it now exists." (Emphasis in original). 28 Pa.Cmwlth. at 167, 368 A.2d at 860.

 Appellants have also renewed in this Court other arguments which were presented to the Commonwealth Court. We conclude that the Commonwealth Court properly disposed of these contentions as well, and we therefore quote the relevant portions of the Commonwealth Court's opinion:

"As to the other relief sought by the petitioners, an audit of the expense account filed by the committee on December 5, 1974, Section 1611 of the Election Code, 25 P.S. § 3231, deals with the audits of expense accounts and provides in part:

'(a) *Within thirty days after the last day for filing any expense account and affidavit required by this act* any five electors of the State or of the political division may present a petition . . . with the Commonwealth Court where a Statewide office is concerned, praying for an audit of such account . . . .' (Emphasis added.)

It is a general rule, of course, that, where a remedy is statutorily provided, the directions of the legislation must be strictly pursued and such remedy is exclusive. *Lurie v. Republican Alliance, supra.* And the exclusive remedy provided here is an audit for which petition must be made within thirty days after the last day for filing the expense account. Clearly, the petition here, filed on June 18, 1976, over eighteen months after the expiration of the period specified in Section 3231 was untimely.

The petitioners argue, however, that the thirty-day rule of Section 1611 is to be applied in a directory rather than in a mandatory manner. Our Supreme Court considered

an analogous argument in the case of *In re Moore,* 447 Pa. 526, 291 A.2d 531 (1972). The appellant there argued that a section of the Election Code which contained time limitations applicable to both the petitioner and the court must be considered mandatory on each. The court held that the time limitations applicable to petitioners were mandatory while those addressed to purely judicial functions were an encroachment on judicial power and should be considered merely directory. We believe that the limitation of thirty days in which to file petitions for audit contained in Section 1611 is also mandatory and that the petitioners, having failed to act within this period, are barred from doing so now.

The petitioners' additional argument that the thirty-day period for filing the audit petition should be measured from the date of the newspaper article is unpersuasive. It is based on the case of *In Re Friends of McErlean, supra,* the facts of which are easily distinguishable, as stated previously, from those found here. In *McErlean,* the expense account itself had been tardily filed and the court extended the period for filing an audit petition from the date when knowledge of the account's filing had been admittedly gained. It is undisputed here that the committee's expense account was timely filed." 28 Pa.Cmwlth. at 167, 368 A.2d at 861.

Although we agree with the appellants that whenever possible the Election Code should be liberally construed to carry out the legislative will that expense accounts of candidates for public office be subject to close scrutiny, *see In re Friends of McErlean, supra,* 431 Pa. at 340, 246 A.2d at 344, we can effectuate that intent only to the extent required by the Election Code. The Election Code by its terms does not require the filing of supplemental accounts. Whether the Code should require such accounts as a matter properly addressed to the Legislature.

Order affirmed.

NIX, J., concurred in the result.

ROBERTS, J., filed a dissenting opinion in which POMEROY, J., joined.

PACKEL, J., did not participate in the consideration or decision of this case.

ROBERTS, Justice, dissenting.

Today the majority clamps the lid of secrecy back onto election campaign financing despite the Legislature's plain intent to remove it forever. In granting appellees immunity from public scrutiny of their election campaign financing, the majority ignores the controlling provisions of the Election Code, departs from our case law, and defeats the overriding public interest in "full, true, and detailed" election expense accounts, the first requirement and essential pillar of open, responsible, and good government. I dissent.

Appellee "Pennsylvanians For Shapp-Kline" (the Committee) was formed to raise funds for the re-election of appellees Milton Shapp and Ernest Kline to the offices of Governor and Lieutenant Governor in the 1974 election. Throughout the 1974 campaign, the Committee received campaign contributions used for the candidates' election. On December 5, 1974, thirty days after Shapp and Kline were elected again, appellee Nancy Mawby, treasurer of the Committee, filed an election expense account with the Bureau of Elections, as required by Section 1607(a) of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. § 3227(a) (Supp.1977). The election expense account, detailing receipts and expenditures of the Committee, was never supplemented, amended, revised, or changed in any manner.

In May, 1976, appellee Nancy Mawby disclosed that some campaign contributions made before the November, 1974 election were not reported in the December, 1974 account. Appellee Mawby also disclosed that, for months following the November, 1974 election, substantial campaign contributions were made to the Committee but that none of these additional campaign contributions had been reported to the Bureau of Elections. On June 18, 1976, within thirty days of

appellee Mawby's disclosure, appellants Robert Butera, Richard Tilghman, Stephen Friend, Nicholas Maiale, and James Ronca filed in the Commonwealth Court a petition to compel appellees to file a supplemental election expense account detailing the unreported campaign contributions made to the Committee and a petition to compel an audit of the December, 1974 account. The Commonwealth Court dismissed the petitions without hearing appellants' claim and this appeal followed.

## I. THE IMPROPRIETY OF APPELLEES' FAILURE TO FILE A SUPPLEMENTAL ELECTION ACCOUNT

Section 1607(a) of the Election Code, 25 P.S. § 3227(a) provides:

"*Expense accounts to be filed*

(a) Every candidate for nomination or election, and every treasurer of a political committee, or person acting as such treasurer, shall within thirty days after every primary and election at which such candidate was concerned, if the amount received or expended or liabilities incurred shall exceed the sum of one hundred fifty dollars, file a full, true and detailed account, subscribed and sworn to by him, setting forth each and every sum of money received, contributed or disbursed by him for primary or election expenses, the date of each receipt, contribution and disbursement, the name of the person from whom received or to whom paid, and the specific object or purpose for which the same was disbursed. . . . "

Section 1607(a) requires every candidate and treasurer of a political committee, within thirty days of a primary or election in which the candidate is involved, to file a "full, true, and detailed account" setting forth "each and every" campaign receipt, contribution, and disbursement. Because the December, 1974 election expense account failed to reflect both pre-election and post-election campaign contributions and expenditures, appellees' account was not "full, true, and detailed" as legislatively mandated by Section 1607 and therefore appellees should be required to file a supplemental

account reflecting "each and every" receipt and contribution.

The meaning of "full, true, and detailed" is plain and certainly does not mean, as the majority holds, less than full, partially true, and not detailed. As Justice (later Chief Justice) Jones stated: "[The Election] Code must be liberally interpreted to carry out the evident legislative intendment that expense accounts of candidates for public office and their committees might be subject to the closest scrutiny." *Friends of McErlean Appeal,* 431 Pa. 334, 340, 246 A.2d 341, 344 (1968). Accord, 1 Pa.C.S.A. § 1928(c) (Supp.1977); *Lurie v. Republican Alliance,* 412 Pa. 61, 192 A.2d 367 (1963). The reading given by this Court in *McErlean* promotes open, honest, and trustworthy elections, and requires elected officials to expose their election campaign to full public scrutiny rather than to merely selected disclosure. Our Legislature has pursued this goal of public disclosure not only in the Election Code but also in other legislation. See Act of July 19, 1974, P.L. 486, §§ 1 et seq., 65 P.S. §§ 261–269 (Supp. 1977) ("Sunshine Law"); Act of June 21, 1957, P.L. 390, §§ 1 et seq., as amended 65 P.S. §§ 66.1–66.4 (1959 and Supp. 1977) ("Right to Know" Act).

In the context of the electoral process, the language requiring "full, true, and detailed" accounts recording "each and every" expenditure manifests a clear legislative intention that candidates for public office and their campaign committees file complete, accurate, and truthful accounts of all election campaign receipts, contributions, and expenses. Any reading of the statute allowing a lesser degree of disclosure ignores the express legislative language and frustrates the achievement of this clear public policy.

The legislative directive requiring disclosure of campaign receipts and expenditures applies to all pre-election campaign activities. All campaign receipts and contributions made before the election to the candidate and his political committee must be accurately reported in order for the account to be "full, true, and detailed."

In deciding whether the legislative directive applies with equal force to post-election receipts and contributions, we must consider how the Legislature has viewed such transactions. Section 1601(e) of the Election Code, 25 P.S. § 3221(e), clearly provides that all election expenses are to be treated the same, whether they are incurred before or after the primary or election. Section 1601(e) provides:

"The words 'election expenses' shall include all expenditures of money or other valuable things made, and liabilities incurred, in furtherance of or in respect to the election of any candidate for election to any public office, or to defeat the candidacy of any candidate for election to public office, whether such expenditures are made before, during, or after the election."

By including in "election expenses" all expenditures, whether made "before, during, or after the election," the Legislature has focused not on the timing of a campaign transaction but rather on the public reporting of the financial transaction itself. Thus, in order to file a "full, true, and detailed" account of "election expenses" as directed by Section 1607(a) of the Election Code, those subject to this disclosure requirement are required to report all receipts, contributions, and disbursements.

The Election Code's thirty day filing period seeks to provide the public with the most complete accounting possible shortly after every election. But nothing in the Election Code suggests that campaign financial transactions occurring beyond the thirty day period are intended to be undisclosed and unreported. These transactions occurring after the filing period provide just as much potential for abuse as those antedating expiration of the filing period. The integrity of the electoral process is not advanced by requiring only that pre-filing transactions be disclosed.

There is no reason to refuse to account for campaign contributions and receipts occurring after the first accounting. To interpret the Election Code to allow campaign contributions and receipts after the first filing date to remain unreported may encourage some persons involved in

campaign financing to postpone campaign financial transactions until thirty days after an election and thus avoid the potentially embarrassing consequences which may accompany certain campaign contributions and receipts. The majority's reading of the Election Code approves a scheme which easily destroys the disclosure provisions which the Legislature intentionally put into the Election Code.

Appellee Nancy Mawby publicly revealed that the December, 1974 account of the Committee was incomplete in that it failed to include all receipts and contributions obtained before the December, 1974 account; moreover, appellee Mawby indicated that contributions were received after the December, 1974 account was filed. How then can it be said that the December, 1974 account was a "full, true, and detailed," accounting of "each and every" receipt and expenditure of the Committee? Because the Election Code requires full disclosure of campaign financing, supplemental accounting is essential if a committee and candidates are to fulfill the statutory disclosure provisions. The majority's interpretation to the contrary negates entirely the important purposes of the campaign financing disclosure provisions.

## II. THE PROPRIETY OF APPELLANTS' PETITION TO COMPEL AN AUDIT OF THE DECEMBER, 1974 ACCOUNT

Section 1611(a) of the Election Code, as amended, 25 P.S. § 3231(a) (Supp.1977), provides:

> "*Audit of expense accounts*
>
> (a) Within thirty days after the last day for filing any expense account and affidavit required by this act any five electors of the State or of the political division may present a petition to the court of common pleas of the county in which is situated the office where such account has been filed or with the Commonwealth Court where a Statewide office is concerned, praying for an audit of such account. . . ."

This Section, read in conjunction with Section 1607(a) of the Election Code, 25 P.S. § 3227(a), reveals a legislative plan

requiring filing, within thirty days of an election, of a "full, true, and detailed account" of "each and every" transaction. Within thirty days of the last day for filing of expense accounts, any five electors are entitled to petition for an audit of the account filed. The possibility that election expense accounts may be subjected to the public scrutiny accompanying an audit provides the further need for candidates for public office to file proper and complete election expense accounts.

This Court has held that if an election expense account is not timely filed, the statutory time period for petitioning to compel an audit is suspended until electors have actual notice of the late filing. *Friends of McErlean Appeal,* 431 Pa. 334, 246 A.2d 341 (1968). In *McErlean,* we concluded that it would defeat the purposes of the Election Code to bar electors from petitioning to compel an audit in such circumstances. As Justice (later Chief Justice) Jones stated for this Court:

"Upon the filing of an expense account an opportunity must be given to those who might question the validity of such account to scrutinize carefully the receipts and expenditures listed in such account, to determine the legal validity of such receipts and expenditures and to ascertain whether the listed receipts and expenditures encompassed *all* the receipts and expenditures. To do so requires time; the Code recognizes such fact and grants twenty [now thirty] days for such purpose."

Id. at 340, 246 A.2d at 344 (emphasis in original).

The issue here is whether the Election Code's thirty day filing period for petitions for audits forever bars electors from filing a petition to compel an audit when an election expense account has been timely filed but is later found to be incomplete. Recent developments, both in and out of this Commonwealth, firmly indicate that the public interest in the integrity of elections must be promoted, rather than frustrated. In light of our Commonwealth's goal of ensuring full, honest, and complete disclosure, and *McErlean's* recognition of the need for the availability of such chal-

lenges; it must be concluded that the thirty day time period is not intended to bar petitions for audits where an election expense account, though filed within the statutory time period, is not "full, true, and detailed" as required by Section 1607(a) of the Election Code. Thus, where electors have a reasonable basis, as this record establishes, for concluding that a timely election expense account has not satisfied the statutory requirement of a "full, true, and detailed" accounting, the thirty day time provision can have no applicability.

When appellee Nancy Mawby disclosed that certain campaign contributions made to the Committee were not reported in the December, 1974 election expense account, appellants could reasonably conclude that the December, 1974 election account was not "full, true, and detailed." The reasonableness of their conclusion is fully supported by the record. Because these electors had no reason to believe that the December, 1974 account was incomplete when filed, the thirty day period should not apply and thus these electors should be permitted to compel an audit.

## III. CONCLUSION

The Election Code imposes at least two obligations of campaign financing disclosure on political candidates and their committees: (1) to file an election expense account within thirty days of an election; and (2) to file a "full, true, and detailed" account. This dual responsibility is not satisfied by simply filing within the thirty day time period. Such procedural conformity cannot satisfy the far more important substantive obligation requiring complete disclosure of all receipts and contributions. Both the Legislature and the public are far more interested in ensuring that everybody is given a plain view of a candidate's financial support.

Those who seek to be entrusted by the public with the responsibilities of public office must set an example not only of leadership, but also of integrity in their responses to the public interest in the conduct of their election and govern-

494

mental affairs. These examples are not set nor is the public interest served when that which is public business is kept from public scrutiny. Because the Legislature requires "full, true, and detailed" disclosure of election affairs, it is no answer to say—as the majority does—that the Election Code is insufficient and that the remedy for this failure to disclose lies with the Legislature. This Court should not condone appellees' attempt to circumvent the important requirement of full public disclosure of campaign financing set forth in the Election Code.

I would reverse the order of the Commonwealth Court and direct that the court proceed to hear and determine the merits of this controversy.

POMEROY, J., joins in this dissenting opinion.