**In re Horsham Township Civic Association, Inc.**

*Albert C. Oehrle*, for petitioners.
*Michael H. Payne*, for respondent.

SMILLIE, *J.*, June 19, 1978—Petitioners are registered electors and taxpayers of Horsham Township, Montgomery County. The Horsham Township Civic Association, Inc. (hereinafter referred to as Association) is a non-profit corporation incorporated under the laws of the Commonwealth of Pennsylvania.

Petitioners seek to compel the Association to file a sworn expense account for money received and distributed for the primary expenses of any candidate for party nomination for the office of Horsham Township Council Member in the May 17, 1977, municipal primary election and for the election expenses of any candidate for election to the office of Horsham Township Council Member at the November 8, 1977, municipal election. The Association appealed from the court finding as a fact that the Association was acting as a political committee, collecting money and disbursing it to elect or defeat candidates, and requiring the filing of such account. The opinion herewith was necessitated by the appeal.

Section 1607 of the Pennsylvania Election Code of June 3, 1937, P.L. 1333, as amended, 25 P.S. §3227(a), requires that the treasurer of any political committee file, within 30 days of any primary or general election in which the political committee is involved, an account setting forth the sum of money received, contributed or disbursed by the

political committee for primary or election expenses. If the receipts or disbursements of the political committee do not exceed $150, the treasurer must certify that fact within 30 days of the election.

In the present matter, both parties agree that such is the applicable law. The sole point of dispute, and the controlling issue in the case, is whether the Association participated politically in Horsham Township's primary and general municipal elections in 1977.

Section 1601 of the Pennsylvania Election Code, 25 P.S. §3221(c) (1963), defines a political committee, as follows: "The words 'political committee' shall include every two or more persons who shall be elected, appointed or chosen, or who shall have associated themselves or cooperated for the purpose, wholly or *in part*, of raising, collecting or disbursing money, or of controlling or directing the raising, collection or disbursement of money for primary or election expenses." (Emphasis supplied.)

The Association did act as a political committee, as defined by the statute, in Horsham Township's primary and general elections in 1977.

The Association was formed for the purpose of participating in civic affairs and to inform the township's residents on matters of public concern in all phases of public life. The record clearly reveals that the Association treated its expressed civic purpose as a mandate to plunge into election battles, armed with the claim of political righteousness, yet using pamphlet verbiage of political candidates designed to influence voters for their member candidates.

At its May 2, 1977, meeting, the Association decided that it would "recommend" George Felbin

and Elaine Hughes, *two of its members*, as candidates for the Republican and Democratic parties' nomination to the Horsham Township Council. To further such purpose, the Association prepared a flyer and a newsletter which were printed and mailed at the Association's expense to members but aided the endorsed member candidates by way of the general electorate.

The newsletter announced that two of the Association members had decided to run for their parties' nominations in the primary election and informed members of how they could help the candidates. The flyer emphasized the attractive aspects of Association members Felbin's and Hughes' background and *endorsed* these candidates in the election. No other candidates were mentioned or their abilities compared in the pamphlets and newsletter. The newsletter and political pamphlet were solely an endorsement of Felbin and Hughes. They were paid for by the Association.

It was difficult and almost impossible to obtain any information from the treasurer of the Association about how the expenses of electing the two candidates were paid or authorized. He was evasive when on the stand. He fumbled with the checkbook, he did not answer any questions about expenses directly, and generally behaved as if he were intentionally concealing the facts of the operation of the Association from the court and the public.

As a result of the primary election, Hughes was one of the Democratic Party's candidates for Township Council. At the June 19, 1977, meeting, the Association "endorsed" Elaine Hughes on the Democratic ticket and Harry Nesbitt on the Republican ticket at the general election for the office of

township council. The Association printed, at its own expense, and hand-delivered *to the residents* of Horsham Township *another* flyer.

The flyers distributed contained a vicious analysis of the incumbent, George Gottschalk's, performance in office. Mr. Gottschalk's campaign literature and promises were compared with his voting record, official actions and statements. The flyers were nastily critical in their appraisal of Gottschalk's performance. The political flyer disparagingly compared Gottschalk's statements with their facts, as the Association perceived them and called them "undisputed." No other candidates were mentioned.

It is clear that the campaign conducted by the Association was not an independent, objective analysis of Gottschalk's performance, but a campaign tactic used to defeat his candidacy and further the candidacy of their own members.

The flyers were distributed to the general populace of Horsham Township. However, the flyer not only compared Gottschalk's statements and actions, but it also asked voters to "consider voting for Hughes and Nesbitt (Levers 7A and 7B), the candidates whom we believe will listen to the residents and who will put Horsham residents first. We believe Hughes and Nesbitt mean what they say."

The flyer was not only a denouncement of the incumbent, but also a ringing endorsement of the candidates whom the Association supported. The flyers were not designed to "inform" the public of a *civic* matter. It was a politcal leaflet designed to attract support for the Association's candidates.

The political material was successful. Gottschalk was defeated and Hughes and Nesbitt were both elected in November.

It is clear that the Association engaged in political activity by endorsing and promoting the candidacies of Hughes, Nesbitt and Felbin and by challenging Gottschalk's conduct in office.

Whenever possible, the Election Code should be construed to carry out the legislative intent that expense accounts of candidates for public office be subject to close scrutiny: In re Shapp, 28 Pa. Commonwealth Ct. 163, 383 A. 2d 201, 204 (1977); Friends of McErlean Appeal, 431 Pa. 334, 246 A. 2d 341 (1968). To conclude that the Association did not engage in political activity would be to fly in the face of the obvious facts and common knowledge. A candidate can be supported not only by making positive assertions on his behalf, but also by portraying the opponent in a negative manner. The Association used public money to have flyers and leaflets printed and distributed which not only attacked the performance of the incumbent, but also endorsed the candidacies of its own two candidate members.

The purpose of the Election Code is to provide the public with information as to the source of financial support used to elect or defeat candidates. The Association entered the election arena and engaged in political activity under the cloak of civic endeavor and disinterested civic holiness. Its political activity is clear and requires the filing of an expense account setting forth the nature of its financial involvement. It is difficult to understand why any organization which professes to inform the public of proper civic duties, should, itself, seek to conceal the source of its revenue. The Association conducts political activity and should file its expenses.