**J. Hank HAMILTON, Democratic Candidate for State Representative in the 26th Legislative District and John Beemer, Chairman of the Chester County Democratic Party, and Thomas Bosak and Thomas Fulton and Brenda B. Treadwell, Petitioners,**

v.

**Tim HENNESSEY and Friends of Tim Hennessey and Carol Hennessey, Treasurer Friends of Tim Hennessey, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1999.

Decided Aug. 28, 2001.

Samuel C. Stretton, West Chester, for petitioners.

William P. Mahon, West Chester, for respondents.

John P. Krull, Jr., Harrisburg, for intervenor, PA House Republican Caucus.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Judge and LEADBETTER, Judge.

DOYLE, President Judge.

Before the Court is the motion of the Pennsylvania House Republican Caucus, intervenor in this case, to quash various subpoenas issued by Petitioners. The original three-count Complaint filed in this Court's original jurisdiction requested preliminary and permanent injunctive relief. Petitioners allege that several newsletters sent on behalf of Representative Timothy Hennessey are "political advertisements" and, thus, should have been included as campaign expenses. Count I sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the First Amendment[1] by using public funds to finance campaign elections. Count II sought declaratory and injunctive relief for violating the Pennsylvania Election Code[2] by using state and public funds to finance Representative Hennessey's election campaign. Count III sought an audit of expenses pursuant to Section 1636 of the

---

1. U.S. CONST., amend. I.

2. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600–3591.

Election Code, 25 P.S. § 3256 (relating to audits), due to the failure to report the receipt and expenditure of public monies in Representative Hennessey's campaign report.

The case was assigned to the Honorable Warren G. Morgan, a Senior Judge of this Court, and a hearing was held on November 2, 1998. By order dated November 6, 1998, Judge Morgan denied Petitioners' request for preliminary injunctive relief. Subsequently, Respondents filed preliminary objections to the petition for review, and a second hearing was held on January 11, 1999. By order dated January 12, 1999, Judge Morgan concluded that Section 1636 of the Code provided an adequate remedy at law. Accordingly, Judge Morgan sustained the preliminary objections to Counts I and II and dismissed those counts, and only Count III, requesting an audit of Mr. Hennessey's campaign expenses, remains.

A hearing on the audit was set for March 8, 1999. On February 5, 1999, at Petitioners' request, this Court issued subpoenas to Representative John M. Perzel, Majority Leader of the House of Representatives, Stephen Drachler, Press Secretary, Jason Ercole of David Welsh Associates, and the Custodian of Records of Image Tech Associates, the company that designed and prepared the newsletters pursuant to a contract with the House. The subpoenas requested the individuals to bring any information regarding how the House Caucus decided on the number of mailings per candidate, as well as any financial records concerning the mailings. The House Republican Caucus was granted leave to intervene in this matter by order dated March 8, 1999. The House Republican Caucus subsequently filed a motion to quash these subpoenas arguing the relevance of the subpoenas, that the subpoenas were overbroad, and that they ran afoul of the protections under the Speech and Debate Clause of the Pennsylvania Constitution.[3] Judge Morgan continued the audit and ordered briefs in support of and in opposition to the motion to quash the subpoenas.

Following briefing of the motion to quash, Judge Morgan concluded that the issues presented in the case were relevant and did not involve a political question, nor was the decision as to the mailings protected by the Speech and Debate Clause. As to the issues of relevance and the political question doctrine, Judge Morgan, concluding that the issues in this case were of first impression in Pennsylvania, relied on, by analogy, federal cases decided under 39 U.S.C. § 3210, relating to the franked mailing privilege for official business of members of Congress. Pursuant to the federal statute, a Member or Member–Elect to Congress may not mail as franked mail laudatory and complimentary information about any Member of, or Member–Elect to, Congress on a purely personal or political basis. Instead, the mailings must be the basis of performance of official duties as a Member or Member–Elect to Congress. *See* 39 U.S.C. § 3210(a)(5)(A).

Judge Morgan cited to the 1973 amendments to the franking statute which provide that the frankability of mail matters shall be determined "by the type and content of the mail sent, or to be sent." *Common Cause v. Bolger*, 574 F.Supp. 672 (D.D.C.1982), *aff'd*, 461 U.S. 911, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983). As a result, Judge Morgan concluded that, in order to determine if the mailings in this case were campaign literature, relying on the rationale of the federal franking cases, extrinsic evidence sought by Petitioners' subpoenas *may* be relevant to decide this issue.

---

**3.** PA. CONST., Art. 2, § 15.

[2] In addition, Judge Morgan pointed out that the Second and Third Circuit Courts of Appeals found that challenges to the franking statute did not involve a political question. *See Albanese v. Federal Election Commission*, 884 F.Supp. 685 (E.D.N.Y.1995), *aff'd*, 78 F.3d 66 (2nd Cir. 1996), *cert. denied*, 519 U.S. 819, 117 S.Ct. 73, 136 L.Ed.2d 33 (1996); *Schiaffo v. Helstoski*, 492 F.2d 413 (3rd Cir.1974). Relying on the rationale of *Schiaffo*, Judge Morgan concluded that the challenge in this case requires interpretation of a statute enacted by the General Assembly requiring that all campaign expenses be reported. As a result, Judge Morgan determined that the issues presented in this appeal are not barred by the political question doctrine.

■ Judge Morgan further concluded that the mailings were not protected under the Speech and Debate Clause, Article II, § 15 of the Pennsylvania Constitution, which protects members of the General Assembly and their aids from all inquiry concerning their official duties as legislators. Judge Morgan reviewed cases interpreting the federal Speech and Debate Clause,[4] which held that the preparation of a newsletter, although "related" to official business, was not a protected activity. *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). Furthermore, the Seventh Circuit in *Hoellen v. Annunzio*, 468 F.2d 522 (7th Cir.1972), rejected the Speech and Debate Clause immunity protection in a franking case. Judge Morgan pointed out that the Pennsylvania Election Code provides that expense accounts of candidates for public office be subject to the closest scrutiny.

*See In re Shapp*, 476 Pa. 480, 383 A.2d 201 (1978). Therefore, Judge Morgan concluded that the Speech and Debate Clause of the Pennsylvania Constitution does not bar inquiry into whether the newsletters constituted campaign literature.

■ Judge Morgan, however, did conclude that the subpoenas were overly broad to the extent that they sought the production of information concerning expenditures for candidates other than Representative Hennessey, and to the extent that they sought information relating to Representative Hennessey outside of the time period from June 8, 1998 through October 19, 1998. Accordingly, by order dated May 26, 1999, the motion to quash was granted in part and denied in part. The House Republican Caucus filed an application for reconsideration before the Court en banc which was granted on June 25, 1999.

After reviewing this matter, including the briefs submitted on reargument, we conclude that Judge Morgan correctly granted in part and denied in part that motion. Therefore, we adopt the well-reasoned opinion of Judge Morgan, dated May 26, 1999, and, based on the rationale expressed therein, the motion to quash the subpoenas is hereby granted in part and denied in part.[5]

### ORDER

NOW, August 28, 2001, following oral argument before the Court sitting en banc, the Pennsylvania House Republican Caucus' motion to quash the subpoenas is hereby granted in part and denied in part as follows:

1. The subpoenas directed to Representative John M. Perzel and Stephen

---

4. U.S. CONST., art. I, § 6.

5. The only issue before this Court is whether Judge Morgan's decision to grant in part and deny in part the subpoenas was proper.

Therefore, we need not and will not address the substantive issue of whether the mailings constituted campaign literature, as that issue is not before us.

Drachler are QUASHED to the extent that they request records of monies expended for Republican incumbent legislators other than Tim Hennessey and to the extent that they request information relating to Tim Hennessey outside of the time period from June 8, 1998 through October 19, 1998. The motion to quash is DENIED as to the remainder of the information requested in the subpoenas directed to Messrs. Perzel and Drachler.

2. The subpoenas directed to Jason Ercole and to the Records Custodian of Image Tech Associates are QUASHED to the extent that they seek financial records, receipts, ledgers and payment records of all monies paid for mailings done for incumbent Republican State House candidates other than Tim Hennessey, and to the extent that they request information relating to Tim Hennessey outside of the time period from June 8, 1998 through October 19, 1998. The subpoena is also QUASHED to the extent it seeks a list of names of other Republican candidates for which mailings were done, identification of the type and number of said mailings, and the number of persons receiving said mailings. The motion to quash is DENIED as to the remainder of the information requested in the subpoenas directed to Mr. Ercole and the Records Custodian of Image Tech Associates.

*OPINION NOT REPORTED*

Argued March 8, 1999.

Filed May 26, 1999.

Before Honorable WARREN G. MORGAN, Senior Judge.

1. The House Republican Caucus was granted leave to intervene in this matter by order dated March 8, 1999.

2. Act of June 3, 1937. P.L 1333, *added by* the Act of October 4, 1978. P.L. 893.

Memorandum Opinion by Senior Judge MORGAN.

Before the Court is the motion of the Pennsylvania House Republican Caucus to quash various subpoenas issued by petitioners[1]. This action was commenced by petitioners seeking declaratory and injunctive relief as well as an audit of the campaign expenses of Representative Tim Hennessey in the General Election of 1998. Petitioners allege that three newsletters sent on behalf of Representative Hennessey are "political advertisements" and thus should have been included as campaign expenses.

By order dated November 6, 1998, we denied petitioners' request for preliminary injunctive relief. Respondents then filed preliminary objections to the petition for review. By order dated January 12, 1999, we concluded that Section 1636 of the Election Code (relating to audits)[2] provided an adequate remedy at law. Accordingly, we sustained the preliminary objections to Counts I and II (equity and declaratory judgment), leaving only Count III, requesting an audit of Hennessey's campaign expenses, remains.

Hearing on the audit was set for March 8, 1999. On or about February 5, 1999, petitioner issued four subpoenas to Representative John M. Perzel, Stephen Drachler, Press Secretary, Jason Ercole of David Welsh Associates and the Custodian of Records of Image Tech Associates.[3] The House Republican Caucus filed a motion to quash these subpoenas, citing relevance, overbreadth and the speech and

3. The subpoenas to Representative Perzel and Stephen Drachler requested "all records of monies expended for Tim Hennessey in 1998 and all other Republican incumbent legislators" as well as "all documents reflecting how the decision regarding the number of mail-

debate clause. Because of the novelty of the issue and the importance of the material sought by the subpoenas to petitioners' case, we continued the audit and ordered briefs in support of and in opposition to the motion to quash subpoenas.

## RELEVANCE

The Caucus' argument as to relevance is twofold. First, the Caucus maintains that the issue of whether the challenged newsletters constitute campaign literature is a non-justiciable political question, consideration of which by this Court would violate the principle of separation of powers. Second, the Caucus argues that even if the issue is properly justiciable, only the content of the newsletters may be analyzed to determine whether they constitute campaign literature. The subpoenas, accordingly to the Caucus, seek to discover the "motive" of sending the newsletters, which the Caucus argues is not relevant to the audit proceeding.

Although the issues in this case appear to be of first impression in Pennsylvania, we find some guidance in federal cases decided under 39 U.S.C § 3210, relating to franked mail privileges for official business of members of Congress. Pursuant to Section 3210(5)(A), members of Congress may not mail as franked mail

"[M]atter which constitutes or includes any article, account, sketch, narration or other text laudatory and complimentary of any Member of, or Member-elect to, Congress on a purely personal or political basis rather than on the basis of performance of official duties as a member or on the basis of activities as a Member-elect . . . ."

In *Rising. et at v. Brown. et al,* 313 F.Supp. 824 (C.D.Cal.1970), a challenge was brought under the franking statute to the statewide mailing of some 300,000 pamphlets, the court considered, in addition to the content of the pamphlet itself, the fact that the Congressman was running for a U.S. Senate seat, that the copies were paid for by Mr. Brown, prepared by a public relations firm which was managing his Senate campaign, stuffed into envelopes by campaign volunteers and was not confined to persons within his district, but sent throughout the State of California. The Court preliminarily enjoined further mailings of the material.

Similarly, in *Hoellen v. Annunzio,* 468 F.2d 522 (7th Cir.1972), an incumbent Congressman used franked mail to send 134,000 questionnaires, 34,000 of which were addressed to constituents in "old" Seventh Congressional District, while 100,000 were addressed to persons residing in the reapportioned Eleventh District for which the Congressman was running. The District Court held that the mailing outside to voters who were not presently constituents of Mr. Annunzio's current district, which was three times the size of the mailing within the Congressman's district, provided an inference that the mailing was for political purposes rather than "official business." The District Court enjoined further mailings outside the District, and the Seventh Circuit affirmed, stating that

---

ings on behalf of each candidate was made." The subpoenas to Jason Ercole and the Records Custodian of image Tech Associates requested "all financial records, receipts, ledgers, payment, records of all monies paid for mailing done for Tim Hennessey in 1998 and all mailings done for other incumbent Republican State House candidates who were running for election in 1998 and who paid for the mailings. Bring a list of the names of all such Republican candidates and a list of what and how many mailings were made in 1998 for each candidate, including Tim Hennessey. and please bring any and all documents. Please also include the number of people who received each of the mailings."

[A] narrow standard that would preclude consideration of any evidence except the contents of the mailing itself would be unreliable and, indeed, would not avoid consideration of the sender's motive, in the extreme case, the text of a letter—perhaps an overt plea for financial support in a partisan election—would reveal an unofficial purpose. In other cases, the contents might be neutral or ambiguous—perhaps a check or a simple affirmative reply—and additional evidence would be needed to determine whether the mailing served an official or an unofficial purpose: To whom was the letter sent? For what expense was the check a payment? Extrinsic evidence of the sender's motive would clearly be relevant to the question whether such a mailing was "official business."

This case falls into a different category. Inquiry limited to the contents of the mailing would indicate an official purpose. For certainly it is appropriate for a Congressman to solicit the views of his constituents on issues of public importance. But if we may go beyond the contents of the letter to ascertain the character of an ambiguous mailing, logic dictates that we should not close our eyes in the face of extrinsic evidence which reveals that an appearance of official business is nothing more than a mask for a private purpose.

*Id.* at 525–26 (Opinion by Stevens, Circuit Judge, now Justice).

In 1973, Congress amended the franking statute to provide express guidelines as to what constitutes "official business." Among the provisions of the 1973 amendment was language overturning the effect of *Hoellen,* and providing that the frankability of mail matters shall be determined "by the type and content of the mail sent, or to be sent." *Common Cause v. Bolger, et al,* 574 F.Supp. 672, (D.D.C.1982), *aff'd* 461 U.S. 911, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983). The Common Cause Court also noted that the 1973 amendment had established an administrative procedure for franking challenges, and had limited the jurisdiction of the federal courts to hear such claims. Id. at 676. The Court in *Common Cause* upheld the 1973 amendments in the face of various constitutional challenges, but warned that

Were the frank shown to be available and widely used for reelection purposes and had plaintiffs demonstrated that such use has a substantial detrimental impact on opposing candidates or members of the voting public seeking to educate themselves on the candidates and the issues, plaintiffs' claims, particularly those based on the First Amendment, would have considerable merit.

*Id.* at 682–83.

By analogy with the federal franking cases, and in the absence of specific statutory language to the contrary, we conclude that the extrinsic evidence sought by petitioner's subpoenas may be relevant.[4]

## POLITICAL QUESTION DOCTRINE

In *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the United States Supreme Court attempted to define the boundaries of the political question doctrine as

[A] textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of

---

4. The Caucus argues that Rule 14 of the House of Representatives regulates mass mailings, and that any challenge to a mass mailing must be by way of complaint to the House Ethics Committee pursuant to Rule 47.

Unlike the 1973 amendment to the federal franking statute, nothing in the Election Code purports to limit the jurisdiction of the judicial branch to conduct an election audit.

judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government ...

The Caucus argues that because the House of Representatives has the constitutional power to determine rules to govern House proceedings and to discipline members, it follows that any review of this power by the Courts would violate the principle of separation of powers and therefore constitute a non-justiciable political question. We do not agree.

In *Albanese, et al v. Federal Election Commission. et al,* 884 F.Supp. 685 (E.D.N.Y.1995), *aff'd,* 78 F.3d 66 (2nd Cir. 1996), petitioners challenged various aspects of the system of funding congressional elections. among them the "incumbent subsidy" and the franking privilege. The Court, citing Article I, Section 5 of the U.S. Constitution (each House may determine the Rules of its Proceedings [and] punish its members), concluded that the challenges to the various "incumbent benefits" such as use of a press secretary, scheduling assistant and public salary were in fact barred by the political question doctrine, stating that

> An attempt by this Court to draw the line between official and personal conduct of Members would entail a policy determination of a kind peculiarly suited to the exercise of legislative rather than judicial discretion.

> Moreover, for this Court to ignore this constitutional separation of powers and become entangled in the micromanagement of the conduct of [members of Congress] would violate the political-

question doctrine and be an affront to the coordinate legislative branch.

*Id.* at 694.

While finding that certain of the challenges were barred by the political question doctrine, the *Albanese* court concluded that the challenge to the franking statute did not involve a political question, citing the numerous prior challenges brought in other federal courts. *Id.*

The Third Circuit Court of Appeals reached the same conclusion in *Schiaffo v. Helstoski,* 492 F.2d 413 (3rd Cir.1974), a case challenging the use of the frank in mailings that petitioner alleged did not constitute official business. The Third Circuit, discussing the political question doctrine, found that there was no "textually demonstrable Constitutional commitment" to Congress of the power to decide questions regarding the exercise of the franking privilege. *Id.* at 419. Rather, the Court noted that

> Interpreting statutes is a more common practice of the federal courts than interpreting the Constitution, and we perceive no reason for regarding the franking statute as implicating standards not susceptible to judicial management. Standards of statutory construction surely are judicially manageable, in fact, since Congress has seen fit to enact a statute granting the franking privilege, we have considerable doubt whether the political question doctrine is applicable at all. We have found no case regarding the application of a statute concerned solely with domestic affairs and passed by Congress in which the political question doctrine has precluded Supreme Court review.

*Id.* (footnote omitted).

Like the court in *Schiaffo,* we find that the challenge here requires interpretation of a statute enacted by the General Assembly requiring that all campaign expenses

be reported. The ultimate question in the case is whether or not the mailings constitute campaign expenses. Had the legislature intended the statute not to apply to activities of the General Assembly, it could have so provided. Therefore, we concluded that this case is analogous to the federal franking cases, and is not barred by the political question doctrine.

## SPEECH AND DEBATE CLAUSE

Next, the Caucus argues that the subpoenas must be quashed based on Article II, § 15 of the Pennsylvania Constitution, commonly known as the Speech and Debate Clause, which protects members of the General Assembly and their aides from all inquiry concerning activities that fall within the legislative sphere. The Caucus posits that since petitioners seek information about decisions concerning expenditures made on behalf of house members, the information sought is within the "legislative sphere" and thus protected by the Speech and Debate clause.

The Caucus points out that when interpreting the Speech or Debate Clause of the Pennsylvania Constitution, it is appropriate to look to decisions interpreting the federal Speech and Debate Clause, Article I, § 6 of the U.S. Constitution, citing *Consumers Education & Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977). In reviewing such decisions, howev-er, we are compelled to conclude that the immunity afforded by the Speech and Debate Clause is unavailing here.

In *Schiaffo,* the incumbent congressman attempted to raise the Speech and Debate clause as preventing inquiry, into the alleged abuses of the frank. The Third Circuit noted that the U.S. Supreme Court in *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) had distinguished between activities protected by the Clause and activities that, although "related" to official duties, were unprotected[5]. 492 F.2d at 418. Among the "related" but unprotected activities was the preparation of a newsletter. *Id.* Consequently, the Third Circuit concluded that

> [T]he thrust of Brewster requires us to regard [the] use of the frank to mail materials in this case as outside the protection of the Speech and Debate Clause. Mailings of items such as newsletters may well be necessary if a congressman is conscientiously to perform his legislative tasks. But Brewster makes it clear that the immunity of the Speech and Debate Clause does not extend to a number of legitimate legislative activities, and we would include among such activities the mailing of materials under the frank.

Similarly, the Seventh Circuit's decision in Hoellen rejected Speech and Debate

---

5. Chief Justice Burger's, writing for a four-member majority of the Supreme Court. stated that:

   It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech and Debate Clause. These include a wide range of legitimate "errands" performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called "news letters" to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however, appropriate, have the protection afforded by the Speech and Debate Clause.
   408 U.S. at 512, 92 S.Ct. 2531.

Clause immunity in a franking case, citing the opinion in the District Court, which held that

> The Brewster decision is decisive of this issue. In holding that the Speech and Debate Clause did not immunize Senator Brewster from prosecution on federal bribery charges, the Supreme Court distinguished between Congressional conduct which is clearly part of the legislative process—such as voting, speaking on the floor or conducting a legislative hearing—and conduct which is incidentally related to the legislative process The Court confined the protections of the Clause to the former and specifically included the conduct with which we are concerned in the latter
> . . . .
> In light of this language, there can be no doubt that the activities at issue in this cases, sending out documents and questionnaires to constituents and others, while "entirely legitimate activities" related to the legislative process, are not 'purely legislative activities' protected by the Speech and Debate Clause. Therefore no doctrine of legislative immunity precludes judicial inquiry into the legality of Congressman Annunzio's use of the frank in this case, even if that inquiry necessitates a consideration of his motives in making the mailings.

468 F.2d at 527 (quoting *Hoellen, et al v. Annunzio,* 348 F.Supp. 305, 314 (N.D.Ill. 1972)).

The Election Code expresses the legislative will that expense accounts of candidates for public office be subject to the closest scrutiny. *See In re Shapp,* 476 Pa. 480, 383 A.2d 201 (1978).

The justiciable issue in this case is narrow and relates to specific conduct of the candidate, not the legislature. Our inquiry is limited to determining whether Hennessey failed to report an expenditure made on his behalf for the purpose of influencing the outcome of the election. There is no dispute that Mr. Hennessey did not pay the expense of preparing and mailing the newsletters and that he knew this when he filed his report. Therefore, the only remaining question is whether the material mailed on Hennessey's behalf was intended to influence the outcome of the election.

If, following the audit, we were to decide, based solely on the content of the newsletters, that their purpose was to influence the outcome of the election, it could not be argued that we could not then further inquire as to the source of the expenditure and find that Hennessey had not complied with the reporting requirement, if that source were a private individual, the right to seek extrinsic evidence to establish the purpose of the newsletter would certainly exist. Because the source here was funds appropriated for use by the legislature, however, the Caucus has asserted arguments that would thwart the plain intent of the Election Code; that candidates make full public disclosure of his campaign financing. Accordingly, we hold that the Speech and Debate Clause does not bar inquiry into the question of whether the newsletters constitute "campaign expenses" under the Election Code.

## OVERBREADTH

Finally, the Caucus argues that the information requested by the subpoenas is overbroad. We agree. Section 1636 of the Election Code relevantly provides that

> The court or auditor shall fix a day as early as may be convenient for the audit, at which time the person by whom such report has been filed shall be required to be present in person to vouch his report and to answer on oath or affirmation all such relevant questions concerning the same, as may be put to him by

the petitioners or their counsel. The auditor shall issue subpoenas to all parties whom the petitioner or the filer of the report may require, to give evidence concerning such report, and he shall determine, subject to exception, all questions as to the admissibility of evidence, and shall file a copy of the evidence with his findings.

25 P.S. § 3256.

Here, as the Caucus correctly points out, we have, by our prior order, limited the audit to Representative Hennessey's October 19, 1998 campaign report. Thus, only testimony and documents relating to Mr. Hennessey's campaign expenses from June 8, 1998 through October 19, 1998 are to be considered. The subpoenas issued to Messrs. Perzel and Drachler, however, seek "all records of monies expended for Tim Hennessey in 1998 and all other Republican incumbent legislators." We shall modify this request to seek only those records relating to Representative Hennessey during the aforementioned time period, and shall grant the motion to quash as to records of monies expended for all other Republican incumbent legislators, which we find to be outside the scope of this audit. Given our prior discussion of extrinsic evidence, however, the request for "all documents reflecting how the decision regarding the number of mailings on behalf of each candidate was made" is within the scope of the audit and the motion to quash is denied as to this request.

Similarly, the subpoenas directed to Mr. Ercole and the Records Custodian of Image Tech Associates request "all financial records, receipts, ledgers, payment records of all monies paid for mailing done for Tim Hennessey during 1998 and all mailings done for other incumbent Republican Pennsylvania State House candidates who were running for election in 1998 and who paid for the mailings." We shall modify this request to include only those records relating to Mr. Hennessey during the relevant time period, including the question of who paid for the mailings, and shall grant the motion to quash as to "other incumbent Republican Pennsylvania State House candidates." The request for "a list of the names of all such Republican candidates and a list of what and how many mailings were made in 1998 for each candidate" is likewise outside the scope of the audit. The request for the number of people who received each of the mailings is, in our view, not relevant to the audit.

### ORDER

AND NOW, this 26th day of May, 1999, following argument on the motion to quash subpoenas filed by the Pennsylvania House Republican Caucus, said motion is GRANTED in part and DENIED in part as follows:

1. The subpoenas directed to Representative John M. Perzel and Stephen Drachler are QUASHED to the extent that they request records of monies expended for Republican incumbent legislators other than Tim Hennessey and to the extent they request information relating to Tim Hennessey outside of the time period from June 8, 1998 through October 19, 1998. The motion to quash is DENIED as to the remainder of the information requested in the subpoenas directed to Messrs. Perzel and Drachler.

2. The subpoenas directed to Jason Ercole and to the Records Custodian of Image Tech Associates are QUASHED to the extent that they seek financial records, receipts, ledgers and payment records of all monies paid for mailing done for incumbent Republican State House candidates other than Tim Hennessey, and to the extent they request information relating to Tim Hennessey outside of the time period from June 8, 1998 through October 19,

1998. The subpoena is also QUASHED to the extent it seeks a list of names of other Republican candidates for which mailings were done, identification of the type and number of said mailings, and the number of persons receiving said mailings. The motion to quash is DENIED as to the remainder of the information requested in the subpoenas directed to Mr. Ercole and the Records Custodian of Image Tech Associates.

3. Hearing on the audit is set for July 7, 1999 at 10:00 a.m. in Courtroom Number One, Fifth Floor, South Office Building, Harrisburg, PA.